Filed 2/27/14 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MURUGANANDAN PRAKASHPALAN et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>ENGSTROM, LIPSCOMB AND LACK et al.,<br><br>    Defendants and Respondents. | B244236<br><br>(Los Angeles County<br>Super. Ct. No. SC112882)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 11, 2014, be modified as follows:

On page 16, footnote eight is deleted and replaced with the following: "Although Rules of Professional Conduct, rule 4-100(B)(3) specifies that such accountings shall be kept for a minimum 'of five years,' the rule does not obviate a fiduciary's duty to provide an accounting."

On page 29, the second and all subsequent sentences of the first full paragraph are deleted.

On page 31, the words of the first sentence of the first full paragraph at line 11, "and expert witness fee, Perlmutter Matter" are deleted.

On page 31, the words of the second sentence, "and the expert witness fees in the Perlmutter Matter" are deleted.

This modification changes the judgment.

The petition for rehearing is denied.

CERTIFIED FOR PUBLICATION.

_____

MALLANO, P. J.                          JOHNSON, J.


I would grant the petition for rehearing.


_____

ROTHSCHILD, J.

Filed 2/11/14 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MURUGANANDAN PRAKASHPALAN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> ENGSTROM, LIPSCOMB AND LACK et al., <br><br> Defendants and Respondents. | B244236 <br><br> (Los Angeles County <br> Super. Ct. No. SC112882) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John H. Reid, Judge. Affirmed in part and reversed in part.

Dion-Kindem & Crockett and Peter R. Dion-Kindem for Plaintiffs and Appellants Muruganandan Prakashpalan and Navamalar Prakashpalan.

Engstrom, Lipscomb & Lack, Robert T. Bryson and Edward P. Wolfe for Defendants and Respondents Engstrom, Lipscomb & Lack, Jerry Ramsey, Walter Lack and Robert Wolfe.

_____

3

Plaintiffs Muruganandan Prakashpalan and Navamalar Prakashpalan were clients of defendant law firm Engstrom, Lipscomb and Lack and the individual defendants Walter Lack, Jerry Ramsey, and Robert Wolfe, who are attorneys with the firm (collectively Engstrom). Plaintiffs appeal judgment entered after the trial court sustained Engstrom's demurrer to their complaint based on Engstrom's representation of plaintiffs. We affirm in part and reverse in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1. *Factual Allegations of the Second Amended Complaint*

Plaintiffs' claims arise out of three separate representations undertaken by Engstrom: the Allegro Matter, the Malibu Construction Matter, and the Perlmutter Matter. The second amended complaint (SAC) alleged 13 causes of action: (1) professional negligence/legal malpractice/conflict of interest; (2) breach of fiduciary duty; (3) fraudulent concealment of conflict of interest; (4) fraudulent concealment of embezzlement; (5) intentional fraud; (6) constructive fraud; (7) unjust enrichment; (8) unfair business practices (Allegro Matter); (9) unfair business practices (Perlmutter Matter); (10) conversion; (11) civil conspiracy to commit intentional fraud; (12) civil conspiracy to commit conversion; and (13) accounting. Plaintiffs' complaint alleged the following:

(a) The Allegro Matter

Plaintiffs' home was severely damaged in the 1994 Northridge earthquake. From January 1995 to January 30, 1998, Engstrom and two other law firms represented plaintiffs and other property owners in a bad faith and property damage claim against their insurer, State Farm. The action was not a class action, and plaintiffs were specifically assigned to Engstrom. In or around November 1997, Engstrom entered into a settlement with State Farm and obtained over $100 million for 93 insured families. Plaintiffs allege that Engstrom received $245,000, about one-third of plaintiffs' settlement share, and distributed the remaining $500,000 to plaintiffs. In February 2012, plaintiffs were able to randomly contact 17 of the plaintiffs in the Allegro Matter. Based on their discussions with the Allegro plaintiffs, it was clear to plaintiffs that Engstrom had instructed all plaintiffs in the Allegro

4

Matter not to discuss the settlement funds with anyone. However, plaintiffs concluded, after conducting a mathematical analysis of the settlement and of the overall litigation, that there was over $22 million of settlement funds unaccounted for. Based upon this discrepancy, plaintiffs calculated that Engstrom had withheld funds from plaintiffs' share of the settlement funds.

(b) The Malibu Construction Matter

From January 1995 through January 30, 1998, Engstrom represented plaintiffs in connection with the Malibu Construction Matter. In late 1994, plaintiffs purchased land in Malibu, California, a fact which Engstrom knew. In early 1995, due to a contractor's negligence, the Malibu property sustained "hill cut failure." Engstrom provided representation to plaintiffs in connection with the contractor's negligence, plaintiffs' insurance claim against its insurer, State Farm, and other construction matters. State Farm provided a defense to plaintiffs in connection with the hill cut failure; this defense was provided at the same time as the Allegro Matter was being litigated. As a result, Engstrom requested that plaintiffs permit Engstrom to review all of plaintiffs' documents and discovery responses prior to submission to State Farm.

Engstrom requested that plaintiffs estimate the cost to repair the hill cut failure, including the cost of importing dirt. Plaintiffs had learned they could obtain free dirt from the Los Angeles County Public Works Department (Public Works), and Engstrom knew of plaintiffs' plans to import dirt to repair the hill cut failure. Plaintiffs requested that Engstrom keep this information confidential.

During the Malibu Construction Matter, Engstrom provided legal advice regarding plaintiffs' neighbors the Perlmutters in connection with a nuisance, and also assisted in getting a restraining order against Jacob Perlmutter, who allegedly hired thugs to harass plaintiff Navamalar Prakashpalan.

(c) The Perlmutter Matter

In January 2005, plaintiffs' Malibu property sustained damages due to a landslide originating on the Perlmutters' property. In 2006, plaintiffs learned the Perlmutters were

involved in unpermitted construction activity and illegal construction that caused the landslide, including abandonment of their 25 feet deep septic pits. Plaintiffs filed a complaint against the Perlmutters for negligence arising from the landslide, and the Perlmutters filed a cross-complaint against plaintiffs alleging that plaintiffs' Malibu construction was the cause of the landslide. The Perlmutters' insurer hired the Law Office of Paul Wright to represent them in this matter.

In early 2009, allegedly after discovering their case had no merit, the Perlmutters retained Engstrom on a contingency basis as their additional attorneys. Although they knew the Perlmutter Matter was substantially related to the Malibu Construction Matter, Engstrom did not notify plaintiffs of the representation or obtain their consent, and Engstrom knew that the Perlmutters were claiming that plaintiffs' slope repair was the cause of the landslide. Yet Engstrom failed to disclose the conflict of interest and during the litigation, Engstrom and their expert claimed that the 3,800 cubic yards of dirt plaintiffs imported caused the landslide. Engstrom used attorneys who did not have direct communication with plaintiffs in the Malibu Construction Matter and Allegro Matter, all of which was a clever plan to conceal the conflict of interest from plaintiffs.

Sometime after the Perlmutters retained Engstrom, the Perlmutters' insurance company hired the law firm of Gibbs, Giden, Locher, Turner & Senet (Gibbs) to join as additional attorneys to represent the Perlmutters in settling the Perlmutter Matter. During the Perlmutter Matter, the Perlmutters revealed that their unpermitted construction activities were performed by entities collectively known as "the McDermott contractors." Plaintiffs amended their complaint to add the McDermott contractors as defendants, including McDermott Plumbing (represented by Skapik Law Group) and McDermott Pumping (represented by Walters, McClusky & Boehle).

After pretrial discovery, Gibbs wanted to settle the matter on behalf of the Perlmutters with plaintiffs, and the Perlmutters made a Code of Civil Procedure section 998 offer. Plaintiffs declined the offer. Gibbs requested continuance of the trial to settle with plaintiffs, and the court granted a continuance to permit mediation. At a mediation held December 3,

2010, defendant Wolfe revealed the damaging information that plaintiffs intended to import dirt from Public Works. The next day, plaintiffs realized the significance of Wolfe's revelation to their case. Plaintiffs "caved in" and accepted the Code of Civil Procedure section 998 offer, although plaintiffs' loss was over $4 million and the offer was $500,000. When the McDermott contractor entities—who were motivated to settle because their negligence caused the landslide—learned of the settlement, plaintiffs were likewise forced to settle with the McDermott parties for $500,000.

Plaintiffs allege they did not discover the conflict of interest until April 2011 while in court on the Perlmutter Matter. At that time, plaintiffs observed a familiar face in the courtroom gallery among the spectators, and recognized the individual as defendant attorney Ramsey. In early May, plaintiffs wrote to Engstrom regarding the conflict of interest, and on May 3, 2011, received a letter in response from Engstrom in which Engstrom denied any conflict of interest, stated that plaintiffs waived the conflict, any contact with plaintiffs' adversaries was insignificant and minimal, and the two matters were not substantially related. Plaintiffs further allege that "[o]n May 16, 2011, [Engstrom] emailed [their] attorney threatening [them] with a debtor examination to effectuate a lien on PLAINTIFFS' property and thereby [Engstrom] collected over $1.3 million." Elsewhere in the SAC, plaintiffs allege the $1.3 million constituted the judgment against them in the Perlmutter Matter.

### 2. *Procedural Background*

On June 6, 2011, plaintiffs commenced this lawsuit, alleging six causes of action for professional negligence and malpractice; breach of fiduciary duty and conflict of interest; fraudulent concealment; constructive fraud, fiduciary fraud, intentional fraud and conspiracy to commit fraud; unjust enrichment; and unfair business practices under Business & Professions Code section 17500 (UCL). Plaintiffs filed a first amended complaint on January 17, 2012, alleging eight causes of action (the same six as the original complaint plus claims for conversion and civil conspiracy).

On April 12, 2012, the trial court overruled defendant's demurrer to the first cause of action and sustained the demurrer as to the second, third, fourth, fifth, sixth, seventh, and

7

eighth causes of action of the first amended complaint, with leave to amend. Plaintiffs filed their SAC on April 30, 2012.

Engstrom demurred to the SAC, arguing the alleged confidential information about the source of the dirt used in the Malibu Construction Matter was a matter of public record and therefore not confidential; Engstrom was entitled to dismissal of the Allegro Matter claims because it could not mount an adequate defense without breaching the attorney-client privilege with respect to the other Allegro Matter plaintiffs under *Solin v. O'Melveny & Myers* (2001) 89 Cal.App.4th 451 (*Solin*); plaintiffs did not plead fraud with sufficient particularity; plaintiffs could not seek restitution because their claims were made under an enforceable contract; plaintiffs failed to allege recoverable damages under the UCL; plaintiffs' conversion claim failed to allege an identifiable sum of money; plaintiffs failed to allege all elements of a civil conspiracy; plaintiffs failed to state facts sufficient to state a claim for accounting; and certain of plaintiffs' claims relating to the Allegro Matter (the second, fourth, seventh, eighth, tenth causes of action) were time-barred. Engstrom requested judicial notice of the grading permit plaintiffs obtained from the City of Malibu in 1998 connection with installation of a "manufactured fill slope" and the Permit issued to the County of Los Angeles for the purpose of entering the plaintiffs' property to deposit fill material.

Engstrom also moved to strike certain portions of plaintiffs' SAC that requested punitive damages and attorney fees and costs on the grounds that the SAC failed to allege malice, fraud or oppression and the cause of action for accounting did not permit the recovery of damages, and the UCL did not provide for attorney fees.

In opposition,[1] plaintiffs generally contended the Public Works documents were expired permits and had been obtained as a result of a privileged communication with

---

[1] Plaintiffs attached to their opposition defendants' answers to interrogatories in which defendants stated that the settlement in the Allegro Matter was subject to a confidentiality agreement. Plaintiffs also sought judicial notice of (1) a copy of the as-built approved plan from the City of Malibu with respect to the grading, (2) correspondence from the City of Malibu regarding the grading dated November 23,

plaintiffs. Further, plaintiffs argued the documents were not public records because Public Works does not provide information over the phone or over the counter unless a party is aware of the information and makes a request in writing. Plaintiffs further distinguished the case from *Solin*, *supra*, 89 Cal.App.4th 451, in which the clients intervened in a case to prevent disclosure of confidential information; here, the other parties in the Allegro Matter were coming forward and volunteering information, and thus the evidence was available. Further, the statute of limitations was not a bar to plaintiffs' claims because Engstrom's actions were committed in secret.

Plaintiffs also opposed the motion to strike, contending the fraud alleged was sufficient under Civil Code section 3294, pointing to Engstrom's alleged conduct in representing adverse interests without disclosing same to plaintiffs and in disclosing confidential information, and by taking settlement funds to which they were not entitled.

In reply, Engstrom asserted that plaintiffs' failure to plead facts sufficient to entitle them to equitable tolling of the statute of limitations under the discovery rule in the Allegro Matter because there was nothing preventing plaintiffs from discovering any alleged misconduct in the 15 years since the settlement of the Allegro Matter. Further, unless all the Allegro plaintiffs waived the attorney-client privilege, plaintiffs would not be able to demonstrate how the settlement monies were disbursed. With respect to the Public Works document, Engstrom contended plaintiffs shared this allegedly confidential information with a public entity long before Engstrom allegedly improperly informed their adversaries.

The court granted Engstrom's request for judicial notice and granted plaintiffs' request for judicial notice only as to the final approved plan from the City of Malibu.

The court sustained the demurrer without leave to amend. The court found that with respect to those claims based on the Allegro Matter (second, fourth, seventh, eighth, tenth, twelfth and thirteenth causes of action), the statute of limitations did not bar those claims even

2010 stating that no imported soils were used in the grading, and (3) defendant Wolfe's correspondence dated December 3, 2010 with Public Works requesting documents evidencing the placing of fill dirt at plaintiffs' residence.

under the delayed discovery rule because plaintiffs alleged sufficient facts to show they did not discover their claim until November 2011.[2] However, plaintiffs' claims based on the Allegro Matter settlement were barred under *Solin*, *supra*, 89 Cal.App.4th 451, which held that where a lawsuit is incapable of complete resolution without breaching the attorney-client privilege, the suit may not proceed, if a balancing of certain factors set forth in *Solin* and explained in *Dietz v. Meisenheimer Herron* (2009) 177 Cal.App.4th 771 is satisfied. Here, the trial court found the plaintiffs had failed to satisfy those factors because although some of the Allegro plaintiffs had come forward, Engstrom would be forced to reveal confidential information relating to the other Allegro plaintiffs in order to defend the action, and thus demurrer was sustained as to those claims on that basis. Further, plaintiffs' claims that a portion of the Allegro Matter settlement proceeds were unaccounted for was entirely based on speculation.

With respect to claims based on the Perlmutter Matter (first, third, fifth, sixth, ninth, and eleventh causes of action), the trial court found that although Engstrom's judicially noticed documents did not establish plaintiffs' importation of fill dirt was a matter of public record, plaintiffs nonetheless failed to explain how they were damaged by this disclosure.

The court also addressed the specific merits of certain of plaintiffs' claims, as more fully discussed below.

The trial court denied leave to amend because plaintiffs failed to show how they could correct the deficiencies in their complaint. In addition, because plaintiffs failed to plead any viable causes of action to support punitive damages, the trial court granted the motion to strike.

---

[2] Although plaintiffs alleged in their SAC that they became aware of their claim in February 2012, plaintiffs initially propounded discovery regarding the Allegro Matter in November 2011.

DISCUSSION

## I. Standard of Review

"The function of a demurrer is to test the sufficiency of a pleading as a matter of law, [and] we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247; *Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420.) A complaint "is sufficient if it alleges ultimate rather than evidentiary facts," but the plaintiff must set forth the essential facts of his or her case "'"""with reasonable precision and with particularity sufficient to acquaint [the] defendant with the nature, source, and extent'"""" of the plaintiff's claim. Legal conclusions are insufficient. (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550 & 551, fn. 5.) "We assume the truth of the allegations in the complaint, but do not assume the truth of contentions, deductions, or conclusions of law." The trial court errs in sustaining a demurrer "if the plaintiff has stated a cause of action under any possible legal theory, and it is an abuse of discretion for the court to sustain a demurrer without leave to amend if the plaintiff has shown there is a reasonable possibility a defect can be cured by amendment." (*California Logistics, Inc. v. State of California*, *supra*, 161 Cal.App.4th at p. 247.)

A complaint must contain a "statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10, subd. (a)(1).)[3] The facts to be pleaded are those upon which liability depends—facts constituting the cause of action, or "ultimate facts." (*Doe v. City of Los Angeles*, *supra*, 42 Cal.4th at p. 550.) Such facts must be plausible. (See *Id.* at p. 551.) "A complaint must allege the ultimate facts necessary to the statement of an actionable claim. It is both improper and insufficient for a plaintiff to simply plead the *evidence* by which he hopes to prove such ultimate facts." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1390.) In negligence

---

[3] All statutory references herein are to the Code of Civil Procedure unless otherwise indicated.

cases, although negligence may be pleaded in general terms, if the pleaded facts of negligence and injury do not naturally give rise to an inference of causation, plaintiff must plead specific facts explaining how the conduct caused or contributed to plaintiff's injury. (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 78.)

## II. Engstrom's Demurrer

### A. *Plaintiffs' Claims Based on the Allegro Action—Statute of Limitations*

Notwithstanding the trial court's ruling that plaintiffs' claims based on the Allegro Matter were not barred by the statute of limitations, Engstrom's brief argues that the statute of limitations bars such claims. As a general rule, respondents who fail to file a cross-appeal cannot claim error in connection with the opposing party's appeal. (*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439.) A limited exception to this rule is provided by section 906, which states in pertinent part: "The respondent . . . may, without appealing from [the] judgment, request the reviewing court to and it may review any of the foregoing [described orders or rulings] for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken." "'The purpose of the statutory exception is to allow a respondent to assert a legal theory which may result in affirmance of the judgment.' [Citation.]" (*Hutchinson v. City of Sacramento* (1993) 17 Cal.App.4th 791, 798.) We therefore consider the statute of limitations issue.

### 1. *Malpractice Claim*

"An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (§ 340.6, subd. (a).) Section 340.6 states two distinct and alternative limitation periods: One year after actual or constructive discovery, or four years after occurrence (the date of the wrongful act or omission), whichever occurs first. The statute applies to an action for malpractice as well as breach of fiduciary

12

duty arising out of the performance of an attorney's professional duties, but it does not apply to actions for fraud. (*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 223.) Further, the statute applies to actions for any act or omission arising out of the performance of an attorney's professional duties. (*Ibid.*)

The statute is tolled only during the time the plaintiff has not sustained actual injury. (§ 340.6, subd. (a)(1).) Actual injury occurs where the plaintiff suffers any loss or injury legally cognizable as damages based on the asserted errors or omissions of an attorney. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 743.) The fact of injury or damage need not be recognized or noticed by the plaintiff. Nor does the fact that damage may be difficult to calculate or prove prevent the legal malpractice statute of limitations from running. (*Croucier v. Chavos* (2012) 207 Cal.App.4th 1138, 1148.)

Here, plaintiffs' injury occurred in 1997 when Engstrom allegedly wrongfully withheld the settlement funds, more than four years before the filing of the plaintiffs' SAC in April 2012. Thus, plaintiffs' malpractice and breach of fiduciary duty claims based on the Allegro Matter settlement funds distribution are barred by section 340.6.

### 2. *Fraud-Based Claims*

We requested the parties to brief separately the issue of the applicability of the statute of limitations in Probate Code section 16460 to client trust accounts and the disbursement of settlement funds from such accounts. Plaintiffs contend that Engstrom had a duty as holder of their client funds in trust, to account for and maintain records of such funds under Rules of Professional Conduct, rule 4-100, and that Probate Code section 16460 governs the limitations period, as well as lessens their duty of inquiry into Engstrom's handling of such funds as a fiduciary; furthermore, the holding of client trust funds is arguably not the rendering of professional services to which Code of Civil Procedure section 340.6 would apply. Engstrom counters that Code of Civil Procedure section 340.6 controls any claims for breach of trust such as alleged here and Code of Civil Procedure section 338, subdivision (d) controls any fraud claims, and also that Probate Code section 16460 by its express terms states that it applies unless the potential breach of trust is covered by another statute. Furthermore,

13

Engstrom argues that both Code of Civil Procedure section 338, subdivision (d) and Probate Code section 16460 supply the same time period and delayed discovery rule and plaintiffs are not under any lessened duty of discovery; as a result, plaintiffs have failed to establish that any new facts not available to them in 1997 came to light in 2012 to justify their late amendment of their pleading.

By its own terms, section 340.6 does not govern claims for fraud.[4]  Generally, courts have applied section 338, subdivision (d) to actions for fraud against attorneys.  This statute of limitations for fraud is three years.  (§ 338, subd. (d).)  This section also codifies the delayed discovery rule, providing that a cause of action for fraud "'is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.'" (*Brandon G. v. Gray* (2003) 111 Cal.App.4th 29, 35; § 338, subd. (d).)  The date a complaining party learns, or at least is put on notice, that a representation was false is the date the statute starts running.  (§ 338, subd. (d).)  The fraudulent concealment doctrine will also toll the statute of limitations under section 338, subdivision (d).  "[T]he ground of relief is that the defendant, having by fraud or deceit concealed material facts and by misrepresentations hindered the plaintiff from bringing an action within the statutory period, is estopped from taking advantage of his own wrong." (*Pashley v. Pacific Elec. Ry. Co*. (1944) 25 Cal.2d 226, 231.)  To take advantage of this doctrine "'the plaintiff must show . . . the substantive elements of fraud[] and . . . an excuse for late discovery of the facts.'" (*Snapp & Associates Ins. Services, Inc. v. Robertson* (2002) 96 Cal.App.4th 884, 890.)

With respect to trust accounts, Probate Code section 16460 applies to a fiduciary's duty to provide an accounting to a beneficiary and provides a three-year limitations period that is triggered by the trustee's accounting duty.  A beneficiary of a trust who receives an

---

[4] Plaintiffs assert that the holding of settlement funds does not arise out of the provision of professional services and thus that section 340.6 does not apply for that reason.  We disagree, as in this case, the funds in the trust account are settlement proceeds, Engstrom's conduct in holding such funds arises out of the provision of professional services, namely, the settlement of the case on plaintiffs' behalf.

accounting that would put him or her on notice of a claim against the trustee has three years from the date of receipt of the accounting to file an action; if no accounting is provided, any action must be filed within three years of the discovery of the claim. Under Probate Code section 16460, the duty of inquiry is triggered where there is sufficient information (either through an accounting or otherwise) to put the beneficiary on notice to take action. (Prob. Code, § 16460, subd. (a); *Noggle v. Bank of America* (1999) 70 Cal.App.4th 853, 861, fn. 5 [a duty of inquiry exists even where the alleged wrongdoer is a fiduciary].)[5]

An express trust is defined as a fiduciary relationship whereby a trustee holds property for another's benefit. (*Placerville Fruit Growers' Assn. v. Irving* (1955) 135 Cal.App.2d 731, 736.) There can be no reasonable dispute that an attorney's client trust account is an express trust: Rules of Professional Conduct, rule 4-100 provides: "(A) All funds received or held for the benefit of clients by a member or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labeled 'Trust Account,' 'Client's Funds Account' or words of similar import, maintained in the State of California . . . ." Further, an attorney owes the client a duty to account for funds held in the client trust account. Rule 4-100 also provides: "(B) A member shall: [¶] . . . [¶] (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the member or law firm and render appropriate accounts to the client regarding them; preserve such records for a period of no less than five years after final appropriate distribution of such funds or properties; and comply with any order for an audit of such records issued pursuant to the Rules of Procedure of the State Bar. [¶] (4) Promptly pay or deliver, as requested by the

_____

[5] Contrary to Engstrom's contention, Probate Code section 16460 does not state that it applies unless any potential breach of trust is covered by another statute. Probate Code section 16460, subdivision (a) states it applies "[u]nless a claim is previously barred by adjudication, consent, limitation, or otherwise." The use of the word "previously" does not mean any other limitations statute is paramount; rather, it connotes that any failure to provide an appropriate accounting, given that such duties are generally ongoing, cannot formerly have been the subject of disposition.

client, any funds, securities, or other properties in the possession of the member which the client is entitled to receive."

In addition, California Rules of Professional Conduct, rule 3-310(D), which was in effect at the time of the settlement of the Allegro Matter, provided that "[a] member who represents two or more clients shall not enter into an aggregate settlement of the claims of or against the clients without the informed written consent of each client." Although the California Rules of Professional Conduct do not specifically address what must be disclosed to a client to obtain the client's "informed consent," the American Bar Association's Model Rules of Professional Conduct impose additional demands, and require the lawyer to disclose the total amount of the aggregate settlement, the details of that lawyer's other clients' participation in the settlement. (ABA Model Rules of Prof. Conduct, rule 1.8(g).)

As pointed out in *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, where there are two statutes governing the same subject, the question of which statute governs is subject to de novo review. (*Id.* at p. 880.) *Vafi* further explained that "'when a general and [a] particular [statutory] provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it.' [Citation.] Thus, a specific statute of limitations takes precedence over a general one, even though the latter "'would be broad enough to include the subject to which the more particular provision relates." [Citation.]'" (*Ibid.*)

Although California has declined to adopt American Bar Association Model Rules of Professional Conduct, rule 1.8(g), which precisely defines the scope of disclosure in an aggregate settlement, an attorney's duty accurately to account for client trust funds in the context of an aggregate settlement is nonetheless governed by Rules of Professional Conduct, rule 4-100(B). Under rule 4-100(B) in the context of an aggregate settlement, the attorney must disclose sufficient information to enable the client to evaluate whether the settlement proceeds have been properly distributed. That rule imposes a more particularized duty than

16

the general duty imposed under Civil Code section 1710 not to omit or misrepresent facts, which duty is the basis for a generic claim of fraud.[6]

Thus, under the rule of statutory construction that we apply a more specific statute, given the accounting duty applicable to the express trust that is a client trust account, we apply Probate Code section 16460 to plaintiffs' fraud-based claims that Engstrom did not properly distribute the aggregate settlement proceeds in the Allegro Matter. As alleged, the only information plaintiffs received from Engstrom was the amount of their share of the Allegro Settlement, Engstrom's attorney fees, and that the 93 families received a total of $100 million. Even without applying the more detailed standard of American Bar Association Model Rules of Professional Conduct, rule 1.8(g), Engstrom's accounting was incomplete because it did not provide plaintiffs with sufficient information to evaluate whether all monies were distributed, and whether they received the sums they were entitled to receive.

As a result, plaintiffs asserted they did discover the claim in February 2012 (after they filed their original complaint) when they conducted a survey of some of the other settling plaintiffs in the Allegro Matter, making plaintiffs' complaint timely under the principles of Probate Code section 16460. Thus, plaintiffs should be permitted to amend their complaint to set forth delayed discovery entitling them to a tolling of the statute of limitations on the Allegro Matter under Probate Code section 16460 based upon an assertion that Engstrom failed to provide an accounting sufficient for them to determine whether their portion of the settlement proceeds was fairly and accurately distributed to them.[7] As a result of this

---

[6] A deceit, within the meaning of Civil Code section 1709 is, in relevant part, "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true[] [and] [¶] . . . [¶] . . . [t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." (Civ. Code, § 1710.)

[7] The pertinent causes of action are the fourth cause of action (fraudulent concealment of embezzlement), seventh cause of action (unjust enrichment), eighth cause of action (unfair business practices), tenth cause of action (conversion), twelfth cause of action (conspiracy to commit fraud), and thirteenth cause of action (accounting)).

insufficient accounting which plaintiffs have alleged was the result of concealment, plaintiffs, who had no other sources of information, were not put on notice of any wrongdoing until they later conducted an investigation by surveying other settling plaintiffs in the Allegro Matter. We note that substantively, the trial court found plaintiffs' claims based on the Allegro Matter failed because they were based upon speculation. However, based upon the accounting duty Engstrom owed to plaintiffs under the Professional Rules of Conduct, and the fact plaintiffs' allegations indicate they received an insufficient amount of information concerning the disposition of the aggregate settlement, this ground for sustaining Engstrom's demurrer is without merit because the plaintiffs' lack of information resulted from Engstrom's alleged failure to adequately account. "'Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances 'a prudent man' would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery.' [Citation.]" (*Vai v. Bank of America* (1961) 56 Cal.2d 329, 342, 353 [failure of fiduciary to fully and fairly disclose material facts constituted breach of fiduciary duty and constructive fraud].)

Although no other cases have so applied Probate Code section 16460, we do not see this as a reason for not doing so here. The statutory limitations period of Probate Code section 16460 (which we only apply to plaintiffs' fraud-based claims due to the exception of Code Civ. Proc, § 340.6) is identical to that of the three-year statute of limitations of Code of Civil Procedure section 338, subdivision (d), and there is a similar, if not identical, delayed discovery rule. The difference is that discovery is triggered under Probate Code section 16460 by the receipt of an accounting, or if no accounting is supplied, by facts sufficient to put the plaintiff on notice of any wrongdoing. Given that accounting duties for an attorney vis-à-vis a client trust account were already in place under the Rules of Professional Conduct at the time of the Allegro Settlement, applying Probate Code section 16460 here does not

18

work an injustice.[8]  Instead, we clarify and reinforce an attorney's duty in the context of an aggregate settlement where the settling plaintiffs will have limited information about the other settling plaintiffs' receipts and the device of the aggregate settlement could provide a shield for an attorney to misappropriate or improperly distribute funds, as plaintiffs have alleged here.

Finally, with respect to an attorney's duties of confidentiality owed to multiple clients in an aggregate settlement, to the extent that other clients' settlement information is confidential, that does not preclude disclosure of some information regarding the settlement sufficient to permit the aggregate settlement plaintiffs to determine whether the settlement funds have been properly distributed.  In that manner, the rule of *Solin*, *supra*, 89 Cal.App.4th at p. 467—that where confidential information is vital to an attorney's defense and the suit could not proceed without disclosure of such confidential information, the suit must be dismissed—will not be implicated because we do not advocate a disclosure of confidential information.  We require that the information disclosed regarding an aggregate settlement must be sufficient to put the plaintiffs' on notice of any potential claim and must comport with an attorney's duties under Rules of Professional Conduct, rule 4-100(A) and (B).

### B.        First Cause of Action (Professional Negligence); Second Cause of Action (Breach of Fiduciary Duty)

Plaintiffs' first cause of action for professional malpractice based upon conflict of interest (breach of duty of confidentiality and breach of duty of loyalty) alleged that Engstrom's representation of the Perlmutters was undertaken without plaintiffs' informed written consent in breach of rule 3-310 of the Rules of Professional Conduct, and Engstrom performed below the standard of care when it disclosed to plaintiffs' adversaries plaintiffs' plan to import free fill dirt from Public Works.  Plaintiffs alleged that they suffered damages in the form of a settlement for substantially less than they were actually damaged in the

---

[8] Although Rules of Professional Conduct, rule 4-100(B)(3) specifies that such accountings shall be kept for a minimum "of five years," we do not read that rule to impose an outside limit on the amount of time an attorney must keep accounting records.

19

Perlmutter Matter, as well as "threatening [them] with a debtor examination to effectuate a lien on plaintiffs' property and thereby [Engstrom] collected over $1.3 million." Plaintiffs' second cause of action for breach of fiduciary duty is based upon the alleged insufficient distribution of settlement funds in the Allegro Matter and the conflict of interest and disclosure of confidential information in the Perlmutter Matter.

Plaintiffs contend the trial court erred in concluding that they failed to allege how Engstrom's disclosure of their plan to import dirt caused them damage because they alleged they would not have settled for $500,000 if the disclosure had not been made, which they assert is a sufficiently detailed allegation to withstand demurrer. Further, even if their dirt importation plan was a public record, defendants were barred from disclosing information obtained during the course of their representation of plaintiffs under *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821. Further, plaintiffs alleged sufficient facts to establish breach of fiduciary duty in their allegations of defendants' embezzlement of the settlement funds, and the trial court erred in applying *Solin*, *supra*, 89 Cal.App.4th 451 because the balancing determination necessary under *Solin* is fact intensive and cannot be made at the demurrer stage.[9]

Rule 3-310(C) of the California Rules of Professional Conduct provides that: "A member shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict . . . ." (Rules Prof. Conduct, rule 3-310(C).) Rule 3-310(E) provides that an attorney shall not, without the informed written consent of the current or former client, "accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member

---

[9] Plaintiffs assert in their opening brief that Engstrom conceded the fill dirt revelation was a basis for the reduction in plaintiffs' settlement figure. However, plaintiffs do not offer any factual support for this assertion.

20

has obtained confidential information material to the employment." (See also Bus. & Prof. Code, § 6068, subd. (e).) However, a "violation of the Rules of Professional Conduct does not, in and of itself, render an attorney liable for damages. [Citations.]" (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1097.) In a tort action for breach of fiduciary duty or professional negligence, however, the rules may inform the scope of an attorney's duty. (*Slovensky v. Friedman* (2006) 142 Cal.App.4th 1518, 1534–1535.)

"""The elements of a cause of action for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) a causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional negligence.""" (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1509.) The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages. (*Ibid*.)

"Where the potential conflict is one that arises from the *successive* representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality*" but that "the primary value at stake in cases of simultaneous or dual representation is the attorney's duty—and the client's legitimate expectation—of *loyalty*, rather than confidentiality." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283, 284.) "'[A]n attorney is forbidden to do either of two things after severing [his] relationship with a former client. [He] may not do anything which will injuriously affect [his] former client in any manner in which [he] formerly represented [the client] nor may [he] at any time use against [his] former client knowledge or information acquired by virtue of the previous relationship.'" (*Oasis West Realty, Inc. v. Goldman*, *supra*, 51 Cal.4th at p. 821.)

Here, with respect to the Perlmutter Matter, plaintiffs' claims for professional negligence and breach of fiduciary duty fail because they allege no causation, a required element of these claims. Plaintiffs assert that attorney Wolfe divulged their plan to import free dirt obtained from Public Works, but do not explain how the Perlmutters' knowledge of their plan caused plaintiffs' damage claim against the Perlmutters to collapse. Plaintiffs have not

21

alleged the basis for their valuation of their case, why their use of fill dirt, or free fill dirt, harmed their position, or why their use of fill dirt was a matter that could be kept confidential in a lawsuit involving damage to their property based upon the fill dirt.

With respect to the Allegro Matter, as discussed above, claims based on professional negligence and breach of fiduciary duty are barred by the statute of limitations in section 340.6.

### C.    *Fraudulent Concealment of Conflict of Interest (Third Cause of Action) and Fraudulent Concealment of Embezzlement (Fourth Cause of Action)*

Plaintiffs' fraudulent concealment causes of action allege that Engstrom failed to disclose that it was representing the Perlmutters in the Perlmutter Action, although attorneys Lack and Ramsey avoided direct contact with the Perlmutters, they were involved in behind-the-scenes legal work, while Wolfe, who had not worked on the Malibu Construction Matter, had contact with the Perlmutters.  As a result, plaintiffs allege they would not have settled the Allegro Matter and would not have settled the Perlmutter Matter for the sums they did.  The court found on the third cause of action for fraudulent concealment of conflict of interest in the Perlmutter Matter that although a disclosable conflict of interest existed, plaintiffs failed to allege how they were damaged by Wolfe's disclosure of their plans regarding the fill dirt.  On the fourth cause of action for fraudulent concealment of funds not distributed in the Allegro Matter settlement, the court found plaintiffs' damage claims speculative and plaintiffs failed to show how the alleged concealment caused damages because the alleged concealment came after the plaintiffs had agreed to settle the matter.  Plaintiffs contend the trial court erred in concluding they did not sufficiently allege causation on the Allegro Matter or Perlmutter Matter.

Civil Code section 1710, paragraph (3) provides that deceit includes "[t]he suppression of a fact, by one who is bound to disclose it."  In general, to prove a fraud based on concealment, a plaintiff must demonstrate:  "(1) the defendant . . . concealed or suppressed a material fact, (2) the defendant [had] a duty to disclose the fact to the plaintiff, (3) the defendant . . . intentionally concealed or suppressed the fact with the intent to defraud the

22

plaintiff, (4) the plaintiff [was] unaware of the fact and would not have acted as he [or she] did if he [or she] had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. (*Linear Technology Corp. v. Applied Materials, Inc*. (2007) 152 Cal.App.4th 115, 131.)

With respect to the Perlmutter Matter, the mere disclosure of plaintiffs' fill dirt plan does not establish why such disclosure was the cause of plaintiffs' lowered settlement figure, and the trial court properly sustained to demurrer to plaintiffs' third cause of action. However, with respect to the Allegro Matter, as set forth above plaintiffs' claims set forth in their fourth cause of action are not time barred, nor are they speculative and plaintiffs are permitted to amend such claims to set forth a basis for their delayed discovery of the facts.

### D.      Fifth Cause of Action (Intentional Fraud)

Plaintiffs' fifth cause of action alleges that Engstrom failed to disclose its conflict of interest in the Perlmutter Matter to plaintiffs, and in communication with plaintiffs by letter dated May 3, 2011, falsely maintained that the matters were not substantially related, plaintiffs had waived the conflict, and Engstrom's contact with the Perlmutters was insignificant and minimal. As a result of these misrepresentations, Engstrom defrauded plaintiffs of $1.3 million.

The trial court found plaintiffs' theory of liability unclear because plaintiffs did not allege why $1.3 million was paid based on defendants' misrepresentations about the conflict of interest. Plaintiffs argue the trial court erred because if plaintiffs had known of the conflict, they would have taken steps to vacate the judgment improperly obtained against them.

The elements of a claim for fraudulent concealment require the plaintiff to show that: "(1) the defendant . . . concealed or suppressed a material fact, (2) the defendant [was] under a duty to disclose the fact to the plaintiff, (3) the defendant . . . intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. (*Marketing West, Inc. v. Sanyo Fisher (USA) Corp*. (1992) 6 Cal.App.4th 603, 612–

23

613.) There must also be a duty to disclose. Such a duty may be established where there is a confidential relationship between the parties, defendant has made a representation which was likely to mislead due to the nondisclosure, there is active concealment of undisclosed matters, or one party has sole knowledge of or access to material facts and knows such facts are not known to or discoverable by the other party. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 346–347.)

Here, plaintiffs' claims fail because they allege no causation. Plaintiffs assert that attorney Wolfe divulged their plan to import free dirt obtained from Public Works, but do not explain how the Perlmutters' knowledge of their plan plausibly caused their damage claim against the Perlmutters to collapse. Plaintiffs have not alleged the basis for their valuation of their case, why their use of fill dirt, or free fill dirt, harmed their position, or why their use of fill dirt was a matter that could be kept confidential in a lawsuit involving damage to their property based upon the fill dirt.

### E.     Sixth Cause of Action (Constructive Fraud)

Plaintiffs' sixth cause of action for constructive fraud was based on Engstrom's disclosure in the Perlmutter Matter of plaintiffs' plan to import free fill dirt obtained from Public Works, and as a result, plaintiffs settled the Perlmutter Matter for less than the amount of their damages. The trial court found plaintiffs failed to allege how Engstrom's revelation of plaintiffs' confidential plan to import dirt from Public Works caused their damages. Plaintiffs contend the trial court erred because they adequately pleaded that Engstrom's failure to maintain their confidences and its conflict of interest caused them damages.

Constructive fraud "''''"is a unique species of fraud applicable only to a fiduciary or confidential relationship."''''" (*Michel v. Moore & Associates, Inc.* (2007) 156 Cal.App.4th 756, 763.) "Constructive fraud 'arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice.' [Citations.] Actual reliance and causation of injury must be shown. [Citations.]" (*Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 548, italics omitted; see also *Younan v. Equifax Inc*. (1980) 111 Cal.App.3d 498, 516, fn. 14 [elements of constructive

24

fraud cause of action are "(1) a fiduciary or confidential relationship; (2) nondisclosure; (3) intent to deceive, and (4) reliance and resulting injury (causation)"].) """In its generic sense, constructive fraud comprises all acts, omissions and concealments involving a breach of legal or equitable duty, trust or confidence, and resulting in damages to another. [Citations.] Constructive fraud exists in cases in which conduct, although not actually fraudulent, ought to be so treated—that is, in which such conduct is a constructive or quasi fraud, having all the actual consequences and all the legal effects of actual fraud." [Citation.]'" (*Estate of Gump* (1991) 1 Cal.App.4th 582, 601; see also Civ. Code, § 1573; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 981–982, fn. 13.) "[W]hether a fiduciary duty has been breached, and whether conduct constitutes constructive . . . fraud, depend on the facts and circumstances of each case. (*Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 415.)

Here, plaintiffs' inability to plead how Engstrom's concealment of its conflict of interest, or its revelation of plaintiffs' confidential plan to import fill dirt caused plaintiffs to settle the case for less than their valuation is fatal to their claim. Plaintiffs have not alleged the basis for their valuation of their case, why their use of fill dirt harmed their position, why their use of fill dirt was a matter that could be kept confidential in a lawsuit involving damage to their property, or why the use of fill dirt as opposed to free dirt affected the outcome of their case.

### F. Seventh Cause of Action (Unjust Enrichment)

Plaintiffs' seventh cause of action for unjust enrichment was based upon the alleged $22 million in unaccounted funds remaining from the Allegro Matter settlement and Engstrom's wrongful retention of a portion of that sum. Plaintiffs sought restitution of such wrongfully obtained sums due them. The trial court found plaintiffs failed to allege that Engstrom retained a larger portion of the settlement funds than it was entitled to retain. Plaintiffs contend the trial court erred because they specifically alleged that Engstrom "'embezzled, misused and stole settlement funds from PLAINTIFFS for their own use'" and at the pleading stage, plaintiffs need only allege ultimate facts.

The elements for a claim of unjust enrichment are "receipt of a benefit and unjust retention of the benefit at the expense of another." (*Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 726.) "The theory of unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched." (*Otworth v. Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 460.) It is not, strictly speaking, a theory of recovery, "'but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so.' [Citation.] . . . It is synonymous with restitution." (*Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793.) Ordinarily, restitution is required only if "'the benefits were conferred by mistake, fraud, coercion, or request.'" (*Nibbi Brothers, Inc. v. Home Federal Sav. & Loan Assn.* (1988) 205 Cal.App.3d 1415, 1422, italics omitted.)

With respect to the Allegro Matter, as set forth above plaintiffs' claims set forth in their seventh cause of action are not time barred, nor are they speculative and plaintiffs are permitted to amend such claims to set forth a basis for their delayed discovery of the facts.

### G.      Eighth Cause of Action (Unfair Business Practices, Allegro Matter)

Plaintiffs alleged that Engstrom violated the UCL by embezzling funds from the Allegro settlement and by violating the confidentiality provisions of the Business and Professions Code and the Rules of Professional Conduct in connection with the Perlmutter Matter, and sought restitution of such funds. The trial court found plaintiffs failed to support their claim for damages because they failed to allege that Engstrom retained a larger portion of the settlement funds than it was entitled to. Plaintiffs contend the trial court erred because they recognize damages are not available under the UCL, but seek restitution of the funds allegedly misappropriated by Engstrom.

"Business and Professions Code section 17200 is written in the disjunctive [and] establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." (*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647.) The three prongs of the law have different thresholds. Under its "unlawful" prong, "the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the

26

UCL." (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1505.) Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong. In a consumer case, determining whether a business practice is "unfair" involves "balancing the utility of the defendant's conduct against the gravity of the harm to the alleged victim." (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 718.) Traditional fraud requirements, such as intent or actual reliance, are inapplicable to the UCL. (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1288.)

A distinguishing feature of the UCL is that it does not provide a private action for damages or other legal remedies. Instead, the UCL provides an equitable means to prevent unfair practices in the future and restore money or property to victims of those practices. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179.) Thus, remedies are limited to injunctive relief and restitution. Unlawful practices are practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 838–839.) To state a cause of action based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law.

A business act or practice is unfair when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, *supra*, 20 Cal.4th at p. 187.) To establish an unfair business act or practice, a plaintiff must establish the unfair nature of the conduct and that the harm caused by the conduct outweighs any benefits that the conduct may have. (*McKell v. Washington Mutual, Inc*. (2006) 142 Cal.App.4th 1457, 1473.)

Finally, a fraudulent business act or practice is one in which members of the public are likely to be deceived. (*Olson v. Breeze, Inc.*, *supra*, 48 Cal.App.4th at p. 618 ["""Fraudulent," as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public "'are likely to be deceived'""].) Thus, in order to state a cause

27

of action based on a fraudulent business act or practice, the plaintiff must allege that consumers are likely to be deceived by the defendant's conduct. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211.)

With respect to the Allegro Matter, as set forth above plaintiffs' claims set forth in their eighth cause of action are not time barred, nor are they speculative and plaintiffs are permitted to amend such claims to set forth a basis for their delayed discovery of the facts.

### H.      Ninth Cause of Action (Unfair Business Practices, Perlmutter Matter)

Plaintiffs alleged that Engstrom owed it a full disclosure of the conflict of interest that existed in connection with Engstrom's representation of the Perlmutters, and that Engstrom's disclosure of plaintiffs' plan to import dirt from Public Works violated rule 3-310 of the Rules of Professional Conduct requiring that Engstrom maintain plaintiffs' confidence. Plaintiffs sought disgorgement of all revenue Engstrom received from plaintiffs in the Perlmutter Matter. The trial court found plaintiffs failed to allege how they were damaged by Engstrom's conduct, and did not allege that defendants obtained any money or property that could be disgorged to them under the UCL. Plaintiffs contend the trial court erred because they did allege that Engstrom obtained $1.3 million from them as a result of Engstrom's fraudulent, unfair, and unlawful acts.

Here, plaintiffs' claims fail because they allege no causation. Plaintiffs assert that attorney Wolfe divulged their plan to import free dirt obtained from Public Works, but do not explain how the Perlmutters' knowledge of their plan caused their damage claim against the Perlmutters to collapse. Plaintiffs have not alleged the basis for their valuation of their case, why their use of fill dirt, or free fill dirt, harmed their position, or why their use of fill dirt was a matter that could be kept confidential in a lawsuit involving damage to their property based upon the fill dirt. Nor can plaintiffs explain or clarify the inconsistency between their assertions that Engstrom received $1.3 million from them while at the same time they assert that the $1.3 million figure constituted the judgment in the Perlmutter Matter.

### I.       Tenth Cause of Action (Conversion)

Plaintiffs alleged that Engstrom instructed the plaintiffs in the Allegro Matter not to discuss the settlement with anyone, yet based upon plaintiff's mathematical analysis of a sampling of some of plaintiffs in the Allegro Matter, Engstrom converted a portion of the Allegro Matter settlement funds to their own use, an assertion that Engstrom refused to respond to under oath.  The trial court found plaintiffs' calculation of the sums owed from the Allegro Matter were unsupported.  Plaintiffs contend that they alleged sufficient facts to support a claim for conversion based upon their calculations of the missing settlement funds.

"'Conversion is the wrongful exercise of dominion over the property of another.'" (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 451.)  The elements of a claim for conversion are (1) "the plaintiff's ownership or right to possession of the property at the time of the conversion," (2) "the defendant's conversion by a wrongful act or disposition of property rights," and (3) damages. (*Ibid*.)  "It is not necessary that there be a manual taking of the property," only "an assumption of control or ownership over the property, or that the alleged converter has applied the property to his [or her] own use." (*Id*. at pp. 451–452.)

With respect to the Allegro Matter, as set forth above plaintiffs' claims set forth in their tenth cause of action are not time barred, nor are they speculative and plaintiffs are permitted to amend such claims to set forth a basis for their delayed discovery of the facts.

### J.       Eleventh Cause of Action (Civil Conspiracy to Commit Intentional Fraud) and Twelfth Cause of Action (Civil Conspiracy to Commit Conversion)

Plaintiffs' eleventh cause of action alleged that to induce plaintiffs to pay over $1.3 million to settle the Perlmutter Matter, Engstrom formed a conspiracy to make a number of material representations to plaintiffs, including concealing the conflict of interest in the Perlmutter Matter and using confidential information in the Perlmutter Matter, threatening plaintiffs with a judgment debtor examination and obtaining $1.3 million.  Plaintiffs' twelfth cause of action alleged that Engstrom requested that plaintiffs not discuss the settlement with anyone, misrepresented that they only retained one-third of plaintiffs' settlement share, there was $22 million in settlement funds unaccounted for, and Engstrom conspired to commit

29

these wrongful acts. The trial court found these claims failed because plaintiffs failed to allege any underlying torts to support the conspiracy claim.

There is no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is committed and damage results therefrom. (*Unruh v. Truck Insurance Exchange* (1972) 7 Cal.3d 616, 631.) The significance of a conspiracy theory of liability is that each member may be held jointly liable as a tortfeasor, even though he or she may not have participated directly in the underlying tort. (*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 574.) "The elements of an action for civil conspiracy are (1) formation and operation of the conspiracy and (2) damage resulting to the plaintiff (3) from a wrongful act done in furtherance of the common design." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062.) Where fraud is alleged to be the object of the conspiracy, the claim must be pleaded with particularity. (*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 211.)

Here, plaintiffs have failed to establish how Engstrom's conduct in the Perlmutter Matter caused them damages, and the trial court properly sustained Engstrom's demurrer to the eleventh cause of action. With respect to plaintiffs' twelfth cause of action based on the torts alleged in the Allegro Matter, plaintiffs' claims are not time barred, nor are they speculative and plaintiffs are permitted to amend such claims to set forth a basis for their delayed discovery of the facts.

### K. Thirteenth Cause of Action (Accounting)

Plaintiffs alleged that Engstrom was in the best position to know the disposition of the Allegro Matter settlement funds, and that the settlement funds received from Engstrom were inaccurate and not based upon the applicable retainer agreement; based on the fiduciary relationship of the parties, plaintiffs were entitled to an accounting. In addition, plaintiffs alleged that plaintiffs paid approximately $300,000 as expert fees in the Perlmutter Matter based on Engstrom's invoices, and that Engstrom misused these funds. The trial court found plaintiffs' accounting claim failed because plaintiffs failed to plead facts sufficient to show they were entitled to an accounting. Plaintiffs contend the trial court erred, pointing to the fact

30

that they alleged defendants were their attorneys, owed them a fiduciary duty, obtained settlement proceeds in which plaintiff had an interest, and had a duty to account for the distribution of such settlement proceedings.

An accounting is an equitable proceeding which is proper where there is an unliquidated and unascertained amount owing that cannot be determined without an examination of the debits and credits on the books to determine what is due and owing. (*St. James Church v. Superior Court* (1955) 135 Cal.App.2d 352, 359; *Peoples Finance etc. Co. v. Bowman* (1943) 58 Cal.App.2d 729, 734.) Equitable principles govern, and the plaintiff must show the legal remedy is inadequate. Thus, where the books and records are so complicated that an action demanding a fixed sum is impracticable, an accounting is appropriate. (*Civic Western Corp. v. Zila Industries, Inc*. (1977) 66 Cal.App.3d 1, 14.) If an ascertainable sum is owed, an action for an accounting is not proper. (*St. James Church*, at p. 359.) Generally, an underlying fiduciary relationship, such as a partnership will support an accounting, but the action does not lie merely because the books and records are complex. (*San Pedro Lumber Co. v. Reynolds* (1896) 111 Cal. 588, 596–597; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 594.) Some underlying misconduct on the part of the defendant must be shown to invoke the right to this equitable remedy. (*Union Bank*, at pp. 593–594.)

With respect to the Allegro Matter, as set forth above plaintiffs' claims set forth in their thirteenth cause of action are not time barred, nor are they speculative and plaintiffs are permitted to amend such claims to set forth a basis for their delayed discovery of the facts. With respect to claims based on the defendants' failure in the Perlmutter Matter to account for $300,000 in expert witness fees plaintiffs paid to Engstrom after plaintiffs rejected defendants' section 998 offer, plaintiffs have alleged they received an insufficient accounting of how such funds were disbursed and allege some of the funds may have been misused. The trial court erred in sustaining the demurrer to this claim on the ground that there was no fiduciary duty owed because Engstrom were plaintiffs' attorneys and owed a duty to account with respect to the expert witness fees paid. To the extent plaintiffs contend defendants

31

fraudulently misappropriated any of such expert witness fees, plaintiffs are permitted to amend their complaint to set forth facts supporting such an additional claim.

### L. *Punitive Damages*

Civil Code section 3294 authorizes an award of punitive damages where the defendant has acted with "oppression, fraud, or malice." "Malice" is described as "conduct that is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Civ. Code, § 3294, subd. (c)(1).) A punitive damage claim depends upon a viable claim for compensatory damages for its vitality. (See *McLaughlin v. National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1164.) Here, because plaintiffs are permitted to amend their complaint to state claims for intentional torts upon which a claim for punitive damages may be based, the trial court erred in striking plaintiffs' prayer for punitive damages.

**DISPOSITION**

The judgment is affirmed with respect to Muruganandan Prakashpalan and Navamalar Prakashpalans' first cause of action (professional negligence), second cause of action (breach of fiduciary duty), third cause of action (fraudulent concealment of conflict of interest), fifth cause of action (intentional fraud, Perlmutter Matter), sixth cause of action (constructive fraud, Perlmutter Matter), ninth cause of action (unfair business practices, Perlmutter Matter), and eleventh causes of action (conspiracy, Perlmutter Matter), and reversed with respect to Muruganandan Prakashpalan and Navamalar Prakashpalans' fourth cause of action (fraudulent concealment of embezzlement), seventh cause of action (unjust enrichment), eighth cause of action (unfair business practices, Allegro Matter), tenth cause of action (conversion), twelfth cause of action (civil conspiracy, Allegro Matter) and thirteenth cause of action (accounting, Allegro Matter, and expert witness fees, Perlmutter Matter). The motion to strike is reversed on those claims related to the Allegro Matter and the expert witness fees in the Perlmutter Matter. The parties are to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


I concur:


MALLANO, P. J.

33

Rothschild, J., concurring and dissenting:

I agree that plaintiffs have not adequately alleged how they were harmed by defendants' disclosures about the fill dirt, so I agree that the demurrer was properly sustained as to all claims arising from that conduct. I disagree about the timeliness of the remaining claims, all of which relate to the settlement of the Northridge earthquake litigation (the "Allegro Matter") in 1997. I would affirm the judgment in its entirety, and I therefore respectfully dissent in part.

Defendants were plaintiffs' lawyers, and all of plaintiffs' claims concerning the settlement of the Allegro Matter arise from defendants' performance of professional services for plaintiffs. Those claims are consequently subject to the statute of limitations defined by subdivision (a) of Code of Civil Procedure section 340.6, which provides that, apart from cases of "actual fraud," the action must "be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." Plaintiffs filed suit more than fourteen years after the (alleged) wrongful act of omission, so their claims are untimely unless they are based on "actual fraud." (Code Civ. Proc., § 340.6, subd. (a).)

In my view, plaintiffs have not sufficiently alleged actual fraud. They claim that defendants did not give them their full share of the settlement proceeds in the Allegro Matter, but plaintiffs admit that their sole basis for that claim is the following: (1) defendants settled the Allegro Matter for "over $100 [m]illion for about 93 families"; (2) in or about November 1997, defendants distributed $500,000 to plaintiffs, and defendants informed plaintiffs that they (defendants) retained one-third of the proceeds of the settlement of plaintiffs' claims as their fee, pursuant to the contingent fee agreement between plaintiffs and defendants; (3) in or about March 2012, plaintiffs learned that 17 of the plaintiff families in the Allegro Matter received, on average, $467,441 from the settlement, which would yield a total of $43,472,029 for 93 families; (4) plaintiffs calculated that, assuming a one-third contingent fee for all 93 families and a total

settlement of $100 million, payment of $43,472,029 in settlement proceeds to the 93 families would leave over $22 million of the settlement proceeds "unaccounted." Plaintiffs infer from these calculations that defendants defrauded them by withholding settlement funds to which plaintiffs were entitled.

Plaintiffs' theory is entirely speculative. Plaintiffs do not allege, and I do not discern, any basis for believing that the 17 families included in their calculations are representative of the 93 families included in the settlement. Rather, plaintiffs allege only that it is "fair to assume the variation in the distribution among all plaintiffs should be within [a] few thousands per family" and "it is fair to assume that most properties [included in the settlement] are in similar category and condition in many aspects." Plaintiffs' groundless assumptions do not constitute sufficient allegations of fraud. Further, *plaintiffs do not even allege the amount of damages that they sought to recover* in the Allegro Matter. Thus they have not sufficiently alleged damages either.

Given that plaintiffs admit that they have no basis for their fraud claim other than what is alleged in their pleadings, and given that an inference of fraud based on plaintiffs' allegations would be pure speculation, I conclude that plaintiffs have not adequately alleged fraud. Their claims are therefore untimely under Code of Civil Procedure section 340.6.

ROTHSCHILD, J.

2