[No. B119164. Second Dist., Div. One. Feb. 25, 1999.]

MARTHA B. NOGGLE et al., Plaintiffs and Respondents, v.
BANK OF AMERICA NT & SA, as Trustee, etc., Defendant and
Appellant.

[No. B119254. Second Dist., Div. One. Feb. 25, 1999.]

MARTHA B. NOGGLE et al., Plaintiffs and Appellants, v.
BANK OF AMERICA NT & SA, as Trustee, etc., Defendant and
Respondent.

854

## COUNSEL

Ross, Sacks & Glazier, Bruce S. Ross, Jana W. Bray; McDonald, Hopkins, Burke & Haber and Anthony J. DiVenere for Plaintiffs and and Appellants for Plaintiffs and Respondents.

White & Case, John A. Sturgeon, Jonathan Dennis; James N. Roethe, John C. Fauvre; and Ullar Vitsut for Defendant and Appellant and for Defendant and Respondent.

## OPINION

**VOGEL (Miriam A.), J.**—A number of residuary beneficiaries of several related testamentary trusts sued the bank acting as the trustee of all of the trusts. A judgment was entered in favor of the beneficiaries but for less than they thought was due to them. The bank appeals, contending specified claims were barred by a three-year statute of limitations. The beneficiaries cross-appeal, contending other claims were not (as the probate court found) barred by the doctrine of res judicata. We affirm in part, reverse in part, and remand with directions.

### FACTS

Clyde E. Blosser and Alice R. Blosser, husband and wife, each established 10 testamentary trusts for the benefit of their 10 siblings (thus creating a total of 20 trusts, 2 for each sibling). The trusts established two classes of beneficiaries. The primary beneficiaries of each trust were a sibling and that

sibling's spouse. The residuary beneficiaries of each trust (or, as the parties call them, the remaindermen) were the children of the sibling. The primary beneficiaries were to receive the income of the trusts for life. Upon the death of the last income beneficiary of each trust, the corpus of that trust was to be distributed per capita to the surviving children of the sibling, the nieces and nephews of the Blossers. Security Pacific National Bank (which later merged with and was replaced by the Bank of America) was named as the trustee of all of the trusts and given the discretion to "manage the trust estate[s] in such a manner as it deem[ed] prudent and advisable under the circumstances and for the best interests of the beneficiaries."

Clyde died in April 1968. Alice died in January 1969. Following the death of each, the Bank assumed its duties as trustee. From 1969 to 1980, the Bank's annual accountings were submitted to and approved by the probate court. In March 1980, at the Bank's request, the probate court relinquished supervision of the annual accountings and the Bank thereafter accounted directly to the trust beneficiaries.

In May 1993, the surviving remaindermen of the trusts still in existence filed a petition for the removal of the Bank as trustee and for damages, alleging the Bank was liable for extrinsic fraud and breach of fiduciary duty, and for charging excessive management fees.[1] Reduced to its core, the petition charged the Bank with investing the trusts' assets for the benefit of the income beneficiaries without regard to the growth of the corpus for the benefit of the remaindermen. For this alleged malfeasance, the remaindermen asked for compensatory damages ($5 million), punitive damages ($2 million), and reimbursement for the allegedly excessive management fees (about $250,000). The Bank answered and asserted various affirmative defenses, including the statute of limitations and the bar of res judicata.

In 1995, the Bank moved for summary adjudication of the claims arising out of its conduct as trustee from 1969 to March 1980 (the years of court supervision). The motion was granted, the court finding (1) that the probate court's orders approving the annual accountings barred the current claims for those years, (2) that the remaindermen had received adequate notice of all of the Bank's petitions during those years, and (3) that there was no evidence of extrinsic fraud and therefore no basis to set aside the orders approving the accountings. Pursuant to a stipulation, the remaining issues were heard by a referee, who issued a statement of decision in April 1997 in which he found, among other things, that the Bank was negligent in its investment strategy

---

[1]As ultimately amended, the petitioners/remaindermen were Martha B. Noggle, Erwin L. Blosser, Jack Blosser, Robert Blosser, Betty Jane Carter, Paul Freeland, Edward Freeland, Glenna Gilleland, Myrna Swain, Elmer Rice, Margaret Nelson, and Ruth Hudoba.

and that the remaindermen were entitled to compensatory but not punitive damages. With regard to the statute of limitations, the referee found that accountings provided to five of the remaindermen were insufficient to put them on notice and that their claims based on breaches that occurred between 1980 (after the court relinquished supervision) and May 1990 (three years prior to the date on which the petition was filed) were timely filed. With regard to Martha Noggle, the referee found that she had actual knowledge in 1985 of the manner in which the investments were made and had received accountings for the relevant periods, and that her claims were therefore barred for the period of 1983 through 1990. With regard to Erwin Blosser, the referee found he too had actual knowledge in 1985 but that his pre-1990 claims were nevertheless timely because he had not received the relevant accounting until a later date.

The probate court approved the referee's statement of decision, and in November 1997 entered a judgment in favor of the remaindermen. The Bank appeals, contending the court should have found that all of the claims based on breaches that occurred before May 1990 were barred by limitations. The remaindermen have cross-appealed to challenge both the probate court's summary adjudication order on the res judicata issue and the manner in which the referee calculated their individual damages.[2]

## DISCUSSION

### I.

The Bank contends the claims of the remaindermen for breaches of the Bank's fiduciary duties that occurred before May 3, 1990, were barred by the three-year statute of limitations. We agree.

### A.

During the relevant years preceding 1986, actions against trustees of express trusts were covered by the four-year period of limitations governing breaches of fiduciary duties in general (Code Civ. Proc., § 343), which period did not begin to run unless the beneficiaries had "actual knowledge of some unequivocal act in violation of duties of the trustee or in repudiation of the trust." (*Di Grazia* v. *Anderlini* (1994) 22 Cal.App.4th 1337, 1345 [28 Cal.Rptr.2d 37].) In 1986, the Legislature enacted Probate Code section

---

[2]In simple terms, there are two major issues: (1) whether claims based on breaches that occurred during the years of court supervision (1969 to 1980) are barred by res judicata, and (2) whether the claims arising between the date the court relinquished supervision (1980) and the date three years preceding the current petition (May 1990) are barred by limitations.

16460 as part of a comprehensive revision of California's trust law.[3] At that time, subdivisions (a)(1) and (a)(2) of section 16460 provided that a beneficiary's cause of action against the trustee of an express trust accrued not only when the beneficiary had actual knowledge of a breach, but also on receipt by the beneficiary of an "interim or final account in writing, or other written report" by the trustee that provided "sufficient information so that the beneficiary . . . reasonably should have inquired into the existence of the claim" or, where "an interim or final account or other report d[id] not adequately disclose the existence of the claim," when the beneficiary "reasonably should have discovered[] the subject of the claim." (Stats. 1986, ch. 820, § 40, p. 2783.)

Section 16460 effected a change not only in the duration of the statute of limitations on actions by beneficiaries against trustees, but also in the events that triggered the running of the statute—but at least one court held that the three-year period provided by section 16460 was triggered, and its inquiry notice provisions brought into play, if (and only if) the beneficiary received an accounting or other written report that conformed to the minimum standards set out in sections 16061 or 16063. (*Di Grazia* v. *Anderlini, supra,* 22 Cal.App.4th at pp. 1346-1349.)

Section 16460 was amended in 1996 so that, as relevant, it now provides thus: "(a) Unless a claim is previously barred by adjudication, consent, limitation, or otherwise: [¶] (1) If a beneficiary has received an interim or final account in writing, or other written report, that adequately discloses the existence of a claim against the trustee for breach of trust, the claim is barred as to that beneficiary unless a proceeding to assert the claim is commenced within three years after receipt of the account or report. An account or report adequately discloses existence of a claim if it provides sufficient information so that the beneficiary knows of the claim or reasonably should have inquired into the existence of the claim. [¶] (2) If an interim or final account in writing or other written report does not adequately disclose the existence of a claim against the trustee for breach of trust or if a beneficiary does not receive any written account or report, the claim is barred as to that beneficiary unless a proceeding to assert the claim is commenced within three years after the beneficiary discovered, or reasonably should have discovered, the subject of the claim. [¶] . . . [¶] (c) A written account or report under this section may, but need not, satisfy the requirements of Section 16061 or 16063 or any other provision." (Stats. 1996, ch. 862, § 40.)[4]

The 1996 amendment was intended to reject the *Di Grazia* holding with regard to the content of the accounting required to put a beneficiary on

---

[3]Subsequent undesignated section references are to the Probate Code.

[4]An interim amendment between 1986 and 1996 is irrelevant to these proceedings. (Stats. 1990, ch. 79, § 14, p. 463.)

notice. As the Law Revision Commission Comment to the 1996 amendment explains, subdivision (a)(2) of section 16460 was amended "to make clear that it applies both where an insufficient account or report is given the beneficiary as well as where the beneficiary has not received any written account or report. *This revision is consistent with the original intent of this section, and rejects the contrary conclusion reached by the court in Di Grazia . . . .* The three-year statute of limitations under subdivision (a) is applicable to all claims for breach of trust and the four-year statute of Code of Civil Procedure Section 343 is inapplicable . . . . [¶] Subdivision (c) is added to make clear that the requirements for a written account or report under this section are independent of other statutes. The governing rule determining whether paragraph (1) or . . . (2) of subdivision (a) applies is whether the account or report 'adequately discloses the existence of a claim.' *Subdivision (c) rejects the holding in Di Grazia . . . that an account or report under this section must satisfy the minimum standards set out in Section 16061 or 16063.*" (Italics added.)

## B.

The Bank contends the 1996 amendment to section 16460 controls in this case, and that all claims based on acts that occurred before May 1990 (that is, more than three years before the remaindermen's petition was filed) are barred. The remaindermen contend the 1986 version of the statute, as interpreted in *Di Grazia,* must control, on the theory that the petition was filed before the 1996 amendment. We agree with the Bank. As the Law Revision Commission Comment makes clear, the 1996 amendment did not change existing law. It clarified it, no more and no less, by correcting *Di Grazia*'s misinterpretation of the statute. Since the retroactive application of an amendment that merely clarifies a statute is not prohibited merely because it applies to facts in existence before the effective date of the amendment, there can be no doubt but that the 1996 amendment applies to the current dispute. (*Western Security Bank* v. *Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507]; *Rodriguez* v. *Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707, 722 [230 Cal.Rptr. 823]; *Edward Fineman Co.* v. *Superior Court* (1998) 66 Cal.App.4th 1110 [78 Cal.Rptr.2d 478].) It follows that, assuming the remaindermen had the required information, their claims based on breaches that occurred more than three years before they filed their petition are barred by limitations.

In an attempt to avoid this result, the remaindermen advance a number of arguments, none of which have merit—and we reject them seriatim.

First, we reject the remaindermen's contention that section 16460 does not bar their claims because the accountings provided by the Bank before 1989

did not contain the statute of limitations warning mandated by section 16063. The problem with this argument is that it is premised on the continuing validity of *Di Grazia*, which is the source of the notion that section 16063 has anything to do with the application of the three-year statute of limitations. As explained above, the 1996 amendment to section 16460 makes it clear that the accountings need not conform to section 16063.

Second, we reject the remaindermen's contention that, because the Bank owed them a continuing fiduciary duty, its continued breach (by its continuing failure to invest in a manner that would have benefited the remaindermen over their parents) tolled the statute of limitations. This argument ignores the fact that section 16460 obligates a beneficiary to act within three years after receipt of information sufficient to permit discovery of a claim, ignores the beneficiary's obligation to mitigate damages, and instead proposes a rule that would permit a beneficiary to wait forever to pursue a claim. Quite clearly, that was not the Legislature's intent.

Third, we reject the remaindermen's contention that each had to examine the accountings for all of the trusts before it was possible to determine that the Bank had failed to invest the trust corpus for the benefit of the remaindermen. The statute of limitations applies separately to each remainderman's claims vis-à-vis the two trusts in which he or she has a per capita interest, not to all 20 trusts as a whole. Each remainderman's cause of action accrued when he had the required knowledge concerning the trusts in which he had an interest, and his knowledge about the other trusts' assets is legally irrelevant.

## C.

This brings us to the issue of accrual, who knew what and when was it known.[5] The Bank contends the accountings and letters provided to the remaindermen "provided more than enough factual information as a matter of law to trigger section 16460 prior to May 1990." Since there is no real dispute about what the remaindermen knew or when they knew it but only about the effect of that knowledge, we agree with the Bank. (See *Jolly* v. *Eli*

---

[5]We summarily reject the remaindermen's contention that they had no affirmative duty to check "every action" the Bank took and were entitled to rely on "the assumption" that their trustee would act in their best interests. Where, as here, no fraud was proved (cf. *Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 420-422, 440 [159 P.2d 958]), section 16460 imposed on the remaindermen a duty of inquiry when sufficient information was received by them to put them on notice of action. (*Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874-875 [191 Cal.Rptr. 619, 663 P.2d 177] [duty of inquiry exists even where the wrongdoer is a fiduciary].)

*Lilly & Co.* (1988) 44 Cal.3d 1103, 1111 [245 Cal.Rptr. 658, 751 P.2d 923] [the discovery of facts essential to a claim, not their legal significance, starts the running of the statute of limitations]; *Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892, 897 [218 Cal.Rptr. 313, 705 P.2d 886].)

*Martha Noggle and Erwin Blosser.* In late 1984, Martha Noggle, her brother (Erwin Blosser) and their mother (an income beneficiary) met with one of the Bank's vice-presidents because Erwin Blosser "was concerned and trying to find out how the bank had managed" the trusts. In January 1985, the vice-president responded with a letter to all three in which he set forth (1) the original value of the six trusts then still in existence (the other fourteen had been previously distributed) and (2) the substantially lower then-current value of each trust. He explained that "during their existence these six trusts have produced total income of $664,000.00. *There has been no growth in the principal due to the fact that the assets have been invested entirely in fixed income securities in order to maximize the current income.*" (Italics added.) We don't see how the Bank could have made it any plainer, and we flatly reject the contention that this letter was insufficient to trigger the statute of limitations. As to these two remaindermen, the claims based on breaches that occurred before May 3, 1990 (the date three years before the petition was filed) are barred by limitations.[6]

*Myrna Swain, Ruth Hudoba, Betty Jane Carter, Margaret Nelson and Paul Freeland.* These remaindermen began to receive annual accountings no later than 1987. Those accountings provided sufficient information to enable each beneficiary to calculate the market value of the assets in the trusts, and were received over a sufficient number of years to permit each remainderman to make comparisons and observe the absence of growth. Under the plain language of the statute, no more was required to trigger the three-year statute. (*Miller* v. *Bechtel Corp., supra,* 33 Cal.3d at pp. 874-875; *Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.App.3d at p. 1113; *Lazzarone* v. *Bank of America* (1986) 181 Cal.App.3d 581, 597 [226 Cal.Rptr. 855].) As to these remaindermen, the claims based on breaches that occurred before May 3, 1990 (the date three years before the petition was filed) are barred by limitations.

It follows that the remaindermen are entitled to damages only for those claims based on acts that occurred on or after May 4, 1990.

---

[6]As to these two remaindermen, there is evidence in addition to the letter. From at least 1982 forward, Martha Noggle received accountings from which the market value of the trusts' assets could have been calculated. As to Erwin Blosser, he had long been convinced that the Bank was guilty of mismanagement, and began writing letters to a number of individuals and agencies at least as far back as the mid-1980's.

## II.

■ The remaindermen contend the doctrine of res judicata does not bar their claims based on breaches that occurred during the years when the probate court approved the annual reports (1969 to 1980). We disagree.

The probate court found that the remaindermen were given legally sufficient notice of the Bank's annual petitions for approval of the accountings for each trust and of the time and place of the hearings to settle those accountings, and that finding is not attacked on this appeal. It follows that there is no factual basis for the remaindermen's claim that the doctrine of res judicata does not apply. The fact that some of the remaindermen may not have received copies of some or all of the accountings filed by the Bank during that period is legally irrelevant—for the simple reason that the Bank was not required to send copies of the accountings to the residuary beneficiaries during the years the court retained supervisorial control over those matters. (§§ 15804, 17203.) The point is that, during those years, the remaindermen were given notice of the hearings, which they could have attended and where they could have examined the accountings and raised any questions they might have had. (*Lazzarone* v. *Bank of America, supra,* 181 Cal.App.3d at pp. 591-592, 596-597 [an order settling an account is entitled to res judicata effect and is conclusive as to all matters that were passed on notwithstanding that some theory might not have been advanced, and a probate court approving an account necessarily passes on the trustee's veracity and exercise of due care].)

## III.

■ The remaindermen also contend the trial court miscalculated their damages by using a formula based on its finding that the "most accurate rate of appreciation for the determination of . . . damages . . . would be the rate of appreciation experience[d] by the common equity funds utilized by the [B]ank." The way the remaindermen see it, they are "entitled to appreciation damages based upon objective market criteria." They are mistaken. It is undisputed that whatever portion of the trust estates that should have been invested in assets that would have benefited the remaindermen over their parents would have been invested in the Bank's common equity trust fund. It follows that it was appropriate for the probate court to approve the referee's calculation of damages based on the amount the trusts actually would have earned. (*Santa Clarita Water Co.* v. *Lyons* (1984) 161 Cal.App.3d 450, 458 [207 Cal.Rptr. 698]; *A.A. Baxter Corp.* v. *Colt Industries, Inc.* (1970) 10 Cal.App.3d 144, 160 [88 Cal.Rptr. 842].)

## DISPOSITION

The judgment in favor of the remaindermen is reversed insofar as it awards damages to them for any claim based upon a breach that occurred before May 3, 1990. In all other respects, the judgment is affirmed and the cause is remanded to the trial court with directions to recalculate damages on the surviving claims (those within the three years immediately preceding the date on which the petition was filed) and enter a new judgment reflecting the corrected calculations. The parties are to pay their own costs of appeal.

Spencer, P. J., and Ortega, J., concurred.

A petition for a rehearing was denied March 17, 1999, and the petition of plaintiffs and respondents for review by the Supreme Court was denied May 12, 1999. Baxter, J., and Chin, J., did not participate therein.