Filed 7/25/25  Gruen v. Gruen CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| ADAM S. GRUEN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CLAUDE GRUEN,<br><br>    Defendant and Respondent. | A170486, A171342<br><br>(City & County of San Francisco<br>Super. Ct. No. 23-PTR-306111)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on June 27, 2025, be modified as follows:

1.    On page 18, add the following sentence before Section III and after the cite to *North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155, 177–179:

> Nor has Adam established by argument or legal authority that the mediation privilege applies to his communication to Claude and his brothers, which merely references a possible mediation that never occurred.

There is no change in the judgment.

1

The petition for rehearing, filed July 14, 2025, is denied.

Dated:  July 25, 2025                          BROWN, P. J

Filed 6/27/25  Gruen v. Gruen CA1/4 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ADAM S. GRUEN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CLAUDE GRUEN,<br><br>        Defendant and Respondent. | A170486, A171342<br><br>(City & County of San Francisco<br>Super. Ct. No. 23-PTR-306111) |

Adam Gruen[1] appeals from the judgment of the trial court in favor of his father, Claude, in a dispute regarding a trust (Trust) settled by Claude's mother-in-law, Rosa Jaffe, and the court's subsequent order awarding Claude attorneys' fees and costs.  We consolidated his appeals for oral argument and decision.

The parties' disputes underlying these appeals were heard in a joint trial with their disputes regarding a separate trust, the Elsbet Gruen Family Trust (Elsbet Trust).  Adam challenges the trial court's findings that (1) most, if not all, of his claims were barred by the statute of limitations set forth in Probate Code section 16460, subdivision (a)(2) and/or by the doctrine of

---

[1] Because several of the parties share a surname, we mostly refer to individuals by their first names.

1

laches;[2] (2) even if the claims were not barred, Adam failed to prove any material breaches of trust by Claude; and (3) Adam brought his claim to remove Claude as trustee in bad faith pursuant to section 15642, subdivision (d). He separately challenges, on various grounds, the court's order granting Claude attorneys' fees based on the bad-faith finding. We affirm.

## BACKGROUND

### 1. Appellate Record

" '[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed . . . correct and the burden is on an appellant to demonstrate, on . . . the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment.' " (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 619.) The appellant must, therefore, " '[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears' " and provide "appropriate legal authority and reasoned arguments" to support their claims of error. (*Id.* at pp. 620, 621; Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).[3])

Adam's briefing does not comply with these rules. As Claude points out, the fact section of Adam's briefing challenging the judgment lacks record citations. Claude argues that Adam's failure to cite the record is further indication that Adam continues to prosecute this action in bad faith, by essentially forcing Claude to re-prove his case.

In his reply brief, Adam responds that "[t]he trial court's Statement of Decision alone provides an adequate record to understand—and assess—most of the trial court's factual and legal determinations. The Statement of

---

[2] Undesignated statutory references are to the Probate Code.

[3] Undesignated rule references are to the California Rules of Court.

2

Decision was drafted by the trial judge after submission of proposals and objections by both sides, and after time for analysis and reflection." He further asserts that "[t]he issues on appeal are almost exclusively legal ones in that they involve [Adam's] assertions that the trial court misinterpreted the governing law, and also misapplied mostly undisputed facts to the required statutory standards." We note, however, that in the fact section of his briefing, Adam does not provide any citations to the Statement of Decision, either. In view of the shortcomings of his briefing, our statement of the facts below is excerpted from the trial court's Statement of Decision and we disregard any factual assertions by Adam that are not contained in the Statement of Decision.

2.     **Factual History**

"This is a family dispute. [Adam] is a son of [Claude]. . . . [Adam] has been a California barred attorney since 1984 and has substantial experience in trust and estates litigation.[4]

"[Claude] and Nina Gruen, [Claude's] late wife and [Adam's] mother, were the trustees and only beneficiaries entitled to receive income or principal from the Trust until the death of the survivor of [Claude] and Nina. Nina died in September 2017. [Adam], along with his four brothers, was a one-fifth, contingent, remainder beneficiary of the Trust. Under the terms of the Trust, each would have received equal shares of the remaining assets of the [T]rust if they outlived both of their parents.

". . . Rosa Jaffe, who was Nina['s] mother, established the . . . [T]rust . . . for the benefit . . . of Nina . . . and Claude . . . . The Trust was funded by

_____

[4] Claude requested judicial notice of documents indicating that Adam is an experienced trust and estates attorney. We deny the request as superfluous in light of the trial court's findings.

3

Rosa Jaffe's estate upon her death in 1994. Her estate tax return shows the Trust was funded with $293,330.09.

"... Rosa Jaffe named [Claude] and Nina co-trustees.... [T]he Trust entitled [Claude] and Nina, then [Claude] as the survivor of the two, to all trust income, and granted them broad discretion to use trust principal. Section 4(A) provides: 'The Trustee shall pay all of the net income of the trust estate in convenient installments no less frequent[ly] than quarterly to [Nina] and [Claude], ("beneficiaries") or to the survivor of them, until the death of such survivor.' The same section gives them the discretion as trustees to pay themselves, as beneficiaries, trust principal 'at such time or times as the Trustee deems such payments necessary or advisable for the support and maintenance of them or either of them at a standard no higher than that enjoyed by them at the time of the Settlor's death.' Based on the record as a whole, the court finds that settlor Rosa Jaffe intended the Trust to primarily benefit [Claude and Nina].

"... [Adam] and his brothers were each entitled to a share of the Trust after the deaths of Nina and [Claude], but only if they survived both parents.

"... [Claude] segregated the Trust assets in [their] own account .... At trial, [Claude] produced tax returns from 2010 to 2017 and provided testimony that the funds were always held in a separate account and that tax returns were always filed. The distributions from the Trust for which there was evidence at trial were proper.... [Claude] made no improper distributions.

"... At least by July 2011, [Claude], by letter, communicated to [Adam] and his brothers the existence of the Trust and that [Adam] and his brothers were contingent remainder beneficiaries of the Trust. The letter further

4

provided the account number for the Trust . . . and provided the password to access the [Trust account electronically].

". . . In October 2017 . . . [Claude] sent a letter to each of his sons, including [Adam], via email, explaining the significance of the Trust, stating that it had assets of approximately $470,000, and announcing his intent to liquidate those assets and distribute them to his sons. The communication included a copy of the Trust instrument. Ten days later, [Claude] delivered checks for over $94,000, with 'Payout from Rosa Jaffe Trust' in the memo line, to each of his sons, including Adam. . . .

". . . Despite the Trust allowing [Claude] and Nina to pay themselves trust principal whenever they deemed it 'necessary or advisable for the[ir] own support and maintenance' at the standard they enjoyed in July 1994, the trust principal grew from $293,000 in 1994 to $470,000 in 2017. During that same period, [Claude] and Nina lived in the Bay Area . . . . They were in their mid-80s by 2017. Nina . . . eventually died . . . and incurred significant medical bills. Despite all of that, the Trust grew in value.

". . . In or around April 2022 . . . [Claude] asked [Adam] to step down as successor trustee of the [Elsbet Trust] . . . . This came after antagonistic behavior by [Adam] toward his brothers and [Claude]. The request led to [Adam] peppering [Claude] with questions about the [Elsbet Trust], which [Claude] answered.

"A few months later, [Adam] reviewed documents related to Elsbet Gruen's estate . . . which [Claude] administered nearly twenty years earlier with the assistance of Ohio counsel who were very familiar with Elsbet and her family. [Adam] concluded that [Claude] (and Ohio counsel) had not properly disclosed the will and Elsbet's heirs to the Ohio court, and that [Claude] had stolen personal property from Elsbet's estate—and he informed

5

his brothers that [Claude] was 'a complete jerk and a thief.'  Within hours, [Adam] rifled off a series of additional emails accusing [Claude] of wrongdoing and dishonesty.  The next day, [Adam] declined to attend a Zoom meeting with his brothers, [Claude], and [Claude's] estate planning attorney to discuss [Claude's] individual estate plans—blaming 'serious concussion-related symptoms' . . . —but gave several pages of advice about the [Elsbet Trust] to everyone involved.  A day later, he wrote indicating that he actually trusted [Claude's] administration of the [Elsbet Trust] and did not seek an accounting of that trust.

"In communications with [Claude] over the following months, [Adam] vacillated from conciliatory to accusatory and litigious. . . . [¶] After [Adam's] antagonism and accusations, [Claude] reconsidered his own estate plan.  On March 15, 2023, [Claude]—who was free to change that plan, without informing [Adam] or anyone else—informed his sons of his decisions, which significantly reduced what [Adam] will receive.  That same day, [Adam] made a formal written demand for an accounting of the [Elsbet Trust].  Five days later, he filed the Petition in this case.  Days later, he emailed his brothers, accusing them of 'start[ing] the estate meddling' that caused [Claude] to change his estate plan, declaring that the Petition on this Trust . . . would be 'eternally embarrassing' for [Claude], and proposing that [Claude] could avoid 'humiliation and financial loss' only by agreeing to mediate with [Adam] over [Claude's] personal estate planning decisions.

"[Adam] asked no questions about the Trust in 2017, when it was terminated and when [Adam] received his share of the Trust assets.  Not until his animosity towards his father and brothers reached a boiling point did he decide to challenge [Claude's] administration of the trust.  [Adam] did not request an accounting or any information about how his parents

6

dissipated what he believed to be (though never was) over $4.5 million of trust assets. He accepted the $94,000 check that Claude gave him, and waited nearly six years—until he became angry at [Claude] for other reasons—to raise any questions or concerns."

### 3. Procedural History

Adam filed his petition in this case in March 2023, asserting claims for breach of trust and requesting an accounting, a surcharge against Claude, and removal of Claude as trustee. He amended the petition, adding a request for declaratory relief. The court jointly tried Adam's claims regarding the Trust and the Elsbet Trust and issued the statement of decision at issue here, finding in favor of Claude on all claims and finding that Adam brought his claim for removal of Claude as trustee in bad faith. The court entered judgment in favor of Claude on March 22, 2024, and the court clerk served Adam with the judgment the same day.

On April 8, Adam filed a Notice of Motion and Motion for a New Trial and a Motion to Vacate the Judgment. He filed a notice of appeal on May 16.

Relying on the trial court's bad faith finding, Claude moved on June 18 for an award of attorneys' fees pursuant to section 15642, subdivision (d), which allows the court to award "all or any part of the costs of the proceedings, including reasonable attorney's fees" against a petitioner who filed a request to remove a trustee in bad faith and contrary to the settlor's intent. The court granted the motion over Adam's opposition and awarded Claude $247,060.17 in attorneys' fees.

On June 21, the trial court issued an order denying for lack of jurisdiction Adam's motion to vacate the judgment and denying his motion for a new trial on the merits. The court clerk served the parties with the order the same day.

7

## DISCUSSION

### I. Standard of Review

We review the trial court's construction of the Probate Code de novo. (*Babbitt v. Superior Court* (2016) 246 Cal.App.4th 1135, 1144.) We review the court's discretionary decisions for an abuse of discretion, and its factual determinations for substantial evidence. (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 103–104.)

### II. The Judgment

Adam's briefing includes scattered references to various issues, with disjointed arguments unsupported by citations to the record or to relevant legal authority. As we construe his arguments, he challenges the judgment primarily on three grounds: (1) the court's finding that Adam's claims were untimely is erroneous; (2) the court erred in concluding that Claude did not engage in any material breaches of trust; and (3) the court erred in finding that Adam brought his claim for removal of Claude as trustee in bad faith. We address each argument in turn.

#### A. Timeliness

##### 1. Statute of Limitations

Probate Code section 16460, subdivision (a)(2) states that "if a [trust] beneficiary does not receive any written account or report, [a] claim [for breach of trust] is barred as to that beneficiary unless a proceeding to assert the claim is commenced within three years after the beneficiary discovered, or reasonably should have discovered, the subject of the claim." Emergency rule 9(a) of the California Rules of Court, Appendix 1, extended the three-year limitations period by 180 days due the COVID-19 pandemic.

We see no error in the trial court's finding that the statute of limitations barred Adam's claims. He filed his petition more than five years

8

after he received notice of the Trust from Claude, a copy of the trust instrument, and a check distributing to him as a beneficiary his share of the trust corpus. That is roughly two years after the expiration of the three-year-plus-180-day limitations period, given the court's finding that as of October 2017, Adam had sufficient information to be on inquiry notice of any potential breach of trust claims against Claude. (§ 16460, subd. (a)(2).) Our reliance on the October 2017 date of Claude's letter to his sons presumes that Adam is correct that Claude's July 2011 memo—which identified the Trust and provided Adam and his brothers login information to access the trust account—did not reasonably place Adam on inquiry notice before 2017.

Adam argues that the limitations period has not begun to run because Claude's termination of the Trust was not consistent with the requirements of section 15403, and therefore that the Trust continues in existence and Claude's breaches of trust are continuous and ongoing. But the trial court found, as a factual matter, that the Trust was terminated in October 2017. Indeed, Claude expressed his plan to terminate the Trust in his October 2017 letter, and he executed that plan 10 days later by distributing the trust corpus to Adam and his brothers by check. Adam cites no authority to establish that a failure to comply with the requirements of section 15403 means that the termination of a trust is ineffective. Further, as the trial court found, Adam consented to the Trust's termination by cashing the $94,000 check from Claude without communicating any questions or concerns at the time. (See § 16463, subd. (a) ["a beneficiary may not hold the trustee liable for an act or omission of the trustee as a breach of trust if the beneficiary consented to the act or omission before or at the time of the act or omission"].) We similarly accept the trial court's implied finding that Adam

consented to the termination "before or at the time of" the termination.[5] (*Ibid.*)  His continuing violation theory fails.

Adam next argues that the limitations period did not begin to run until he discovered or reasonably should have discovered his claim that Claude misused trust principal.  He states the statute of limitations is triggered only when the trustee has provided sufficient accounting information to allow the beneficiaries to evaluate whether they have claims against the trustee, citing *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1124–1127 (*Prakashpalan*) and *Noggle v. Bank of America* (1999) 70 Cal.App.4th 853, 861 (*Noggle*).  He argues that the delayed accrual of the statute is particularly appropriate where the parties are in a relationship of special trust.  (*Britton v. Girardi* (2015) 235 Cal.App.4th 721, 736–737 (*Britton*).)  *Prakashpalan* and *Britton* are distinguishable, and *Noggle* supports Claude's position here, rather than Adam's.

In *Prakashpalan*, the California Rules of Professional Conduct required the defendant law firm to provide more than the bare-bones information it reported to the plaintiffs regarding the apportionment of settlement proceeds from an earlier lawsuit in which they were one of 93 settling families. (*Prakashpalan*, *supra*, 223 Cal.App.4th at pp. 1124–1125.)  The plaintiffs alleged that they could not, with the information provided, "determine whether their portion of the settlement proceeds was fairly and accurately distributed to them" and, at the time, they "had no other sources of information" from which they could make that determination.  (*Id.* at p. 1125.)  Years later, after surveying other settling families, plaintiffs

_____

[5] For the same reasons, we reject Adam's challenges to the trial court's finding that his consent to the Trust's termination precludes his claims that the termination constituted an actionable breach of trust and that he was entitled to a resulting declaration that the termination was unlawful.

10

learned that $22 million of the overall $100 million settlement amount was missing and brought fraud and related claims against the law firm. (*Id.* at pp. 1114–1115.) The court concluded that the plaintiffs adequately alleged that the section 16460 limitations period was tolled until they discovered that the $22 million could not be accounted for. (*Id.* at pp. 1125–1126.) In *Noggle*, the court concluded that, because the plaintiff beneficiaries of a trust had received annual accountings, along with an explanation from the trustee that the trust assets had been invested intentionally so as to maximize the distribution of income rather than the growth of trust principal, the beneficiaries had sufficient notice of their claims to trigger section 16460's limitations period. (*Noggle*, *supra*, 70 Cal.App.4th at pp. 860–861.) Although neither case is precisely on point, *Noggle*'s facts are closer to those here than are the facts of *Prakashpalan*.

Here, in contrast to *Prakashpalan*, Adam has not indicated what additional information he needed from Claude that would have put him on inquiry notice of any claimed breaches of trust. Adam primarily relies on the asserted breach that Claude misused trust principal, but also references Claude's asserted failure to provide notice pursuant to section 16061.7. As to the former, Adam does not state what he could not reasonably have discovered regarding Claude's use of trust principal after receiving the October 2017 letter by accessing the trust account online (to which he had access beginning in July 2011) and reviewing all trust-related transactions there. Unlike in *Prakashpalan*, Adam has not shown that Claude was anything but transparent about the Trust's assets and his dealings with them, nor that Claude prevented him from learning about any use of trust principal. Instead, just as with respect to the *Noggle* beneficiaries, Adam had access to the value of trust assets that would allow him to determine what

11

Claude was or was not doing with trust principal.  Even with that level of access, Adam either did not log in and view trust transactions within the limitations period, or he did and was not concerned with the transactions he observed there.  He cannot blame Claude's lack of disclosure for the untimeliness of his claims.  (See *Noggle, supra,* 70 Cal.App.4th at p. 860 ["section 16460 obligates a beneficiary to act within three years after receipt of information sufficient to permit discovery of a claim"].)

Starting in October 2017, Adam could review the trust instrument itself, along with Claude's letter stating he planned to terminate the Trust.  If the asserted breach was the failure to give the notice required by section 16061.7 upon Nina's death in September 2017, Claude's provision of the trust instrument conveyed sufficient information to allow Adam to make that claim.  He did not file his petition until more than five years later.  And while Claude may have had a heightened duty to communicate with Adam due to their relationship of "special trust" (*Britton, supra,* 235 Cal.App.4th at p. 734), Adam has not identified anything material that was not communicated to him or that he did not have access to after October 2017 at the very latest.  He therefore has not demonstrated error in the trial court's conclusion that he "should have discovered the subject of his Trust claims no later than October 2017," and that "there is no substantial evidence that [he] discovered *any* relevant facts significantly after October 2017."  (Italics added.)

Adam suggests that Claude's October 2017 letter did not comply with section 16061.7 and therefore could not have triggered the statute of limitations.  But section 16460, subdivision (a)(2) does not require compliance with section 16061.7 to trigger the statute.  Instead, it requires only that the

beneficiary-claimant "discovered, or reasonably should have discovered, the subject of the claim."

Adam argues that no statute of limitations applied to his claim for removal of Claude as trustee and his request for declaratory relief. Even presuming that those claims were not subject to any independent statutes of limitation, we note that both claims hinged on Adam's ability to prove Claude's breaches of trust. Adam was required to bring his claims for breach of trust within the limitations period, but as we have discussed, he did not do so. He has not provided any authority for the proposition that, notwithstanding the untimeliness of the underlying claims of breach, his derivative claims for removal and declaratory relief survived and he could prosecute them without time limitation.

Finally, Adam argues that Claude did not sufficiently allege the statute of limitations as an affirmative defense in response to his petition. Claude counters by citing the section of his response titled "Any Claims Adam May Have Had Related to Claude and Nina's Pre-Termination Administration Are Time-Barred." There, Claude cites section 16460 as the applicable limitations period, discusses his October 2017 letter and the distribution check he issued to Adam 10 days later, and asserts that Adam was placed on inquiry notice as of October 2017 to investigate any trust claims he may have had and therefore his 2023 petition was untimely. In his reply brief, Adam essentially concedes that Claude is correct as to the claims for breach of trust controlled by section 16460's limitations period. Still, he implies that section 16460 does not apply to his breach of fiduciary duty and declaratory judgment claims. As explained, his declaratory judgment claim is derivative of his breach of trust claims, and he did not allege in his amended petition a cause of action for breach of fiduciary duty; we assume that any such claim to

13

which he is referring is derivative of his breach of trust claims and therefore barred.

### 2. Laches

Adam argues that because his claims were legal and statutory, not equitable, laches could not bar them. Although probate proceedings are generally statutory in nature (*Estate of Tarlow* (2025) 109 Cal.App.5th 124, 129, 132), "[t]he remedies of a beneficiary against the trustee are exclusively in equity." (§ 16421; see, e.g., *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 186 (*Pizarro*) ["the court has broad equitable powers to protect the trust estate"].) Adam has not otherwise cited a case or authority that supports the proposition that the equitable doctrine of laches cannot apply in a trust dispute simply because the proceedings are "statutory in nature."

### B. Breach of Trust

### 1. Alleged Breaches

Section 16400 makes "[a] violation by the trustee of any duty that the trustee owes the beneficiary . . . a breach of trust." Adam first argues that Claude breached his duty to keep the beneficiaries reasonably informed of the Trust and its administration, which includes providing a copy of the trust instrument to the beneficiaries pursuant to section 16060.5. (§ 16060.) "The information provided pursuant to section 16060 must be the information reasonably necessary to enable the beneficiary to enforce the beneficiary's rights under the trust or prevent or redress a breach of trust." (*Breslin v. Breslin* (2021) 62 Cal.App.5th 801, 808.)

Here, as of July 2011, Claude notified Adam and his brothers of the existence of the Trust and provided them access to the trust account. While Claude did not provide Adam a copy of the trust instrument at that time, he provided sufficient information to allow Adam at least to inquire as to the

14

Trust, including by requesting a copy of the Trust. Further, as explained *ante*, Claude provided Adam a copy of the Trust in October 2017, and for more than five years Adam did not express any concerns or make any inquiries of Claude regarding the Trust. Adam has not demonstrated an actionable breach of trust claim against Claude pursuant to section 16060.

### 2. Other Arguments Related to Breach

Although Adam identifies the trial court's excuse of Claude's purported breaches of trust pursuant to section 16440, subdivision (b) as one of the issues on appeal, he provides no argument on that issue in his opening brief and references it only briefly in reply without citation to authority. Accordingly, we deem any purported challenge on this ground forfeited. (*Apex Solutions, Inc. v. Falls Lake Ins. Management Co., Inc.* (2024) 100 Cal.App.5th 1249, 1255, fn. 5; *Pizarro, supra*, 10 Cal.App.5th at pp. 179–181 [arguments scattered throughout brief and lacking logical coherence deemed forfeited].)

We similarly disregard Adam's references to breaches of the Internal Revenue Code and his allegations that Claude's decisions subjected him or the Trust to potential tax liability. (*L.O. v. Kilrain, supra*, 96 Cal.App.5th at p. 621 [court of appeal may deem forfeited claims not supported by "appropriate legal authority and reasoned arguments"]; rule 8.204(a)(1)(B).)

### C. Removal of Trustee

### 1. Removal

The trial court concluded that Adam's request for removal of Claude as trustee was derivative of his breach of trust claims: Adam argued that Claude should be removed based on the alleged breaches of trust. Because Adam has failed to establish error in the trial court's rulings that Claude did

15

not commit any material or actionable breaches of trust, we find no error in the court's denial of Adam's claim for removal.

### 2. Bad Faith

Adam challenges the trial court's finding that he sought removal of Claude as trustee in bad faith. (See § 15642, subd. (d).) He urges that a bad faith finding requires a showing of both his subjective state of mind and an objective lack of merit to his removal claim; the trial court, by contrast, considered only his subjective mental state. In support of his argument, Adam cites cases that apply a standard requiring a showing of both bad faith and reasonable cause. (See *Powell v. Tagami* (2018) 26 Cal.App.5th 219, 233–234 [applying section 17211, where the claim must be asserted "without reasonable cause and in bad faith"]; *Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 926, fn. 47 [applying malicious prosecution standard].) But as set forth in *Bruno v. Hopkins* (2022) 79 Cal.App.5th 801, 822 (*Bruno*), section 15642, subdivision (d) does not, by its plain terms, require a showing that the removal claim was brought without reasonable cause; rather, it requires a showing of (1) bad faith; and (2) that removal would be contrary to the settlor's intent. (*Ibid.*) Adam declined to argue in his opening brief that the trial court erred insofar as it found that removing Claude as trustee would be contrary to Rosa Jaffe's intent, so we deem the second element forfeited. As to the first, we note that subdivision (d) of section 15642 "was specifically designed to address the damage to trust estates resulting from *bad faith* claims." (*Bruno*, at p. 819 [italics added]; see also *id.* at p. 820.) Consequently, we need not find that Adam's request for Claude's removal was without reasonable cause, and Adam does not argue that the trial court's finding of bad faith lacked sufficient evidentiary support.

16

Even if the statute did require a showing that Adam's removal claim was objectively meritless, we would find no error. The trial court concluded that there was no basis for Adam's request to remove Claude as trustee because at the time he brought his petition, there was no Trust—it had been terminated years earlier—and therefore there was no trustee to remove. Even if there were a trustee, the court explained, Adam had not presented a factual basis for granting the "extraordinary" relief of removing a trustee named by the settlor. The court rejected Adam's claim that Claude should be removed as trustee for lack of capacity or because he created discord among the beneficiaries. Neither of these allegations were raised in Adam's petition, and they were therefore forfeited. In addition, the court found, Adam presented no evidence of lack of capacity and had, himself, been the root of any discord among the beneficiaries. Further, as explained *ante*, the statute of limitations and/or laches barred the breach of trust claims underlying his request for removal.

Adam urges that, for its bad faith finding, the trial court should not have relied on his email to his brothers indicating that they should mediate his claims because litigation would be "eternally embarrassing" and humiliating for Claude and would be expensive. He argues that the email was protected by the mediation privilege, citing *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 121, 129, and argues that he cannot have waived the privilege without express agreement orally or in writing. But as Claude points out, Adam *forfeited* any argument that the trial court could not rely on Adam's emails to his brothers as evidence of his bad faith by not making that argument in the trial court. Waiver and forfeiture are distinct concepts, and regardless of whether Adam formally waived any mediation privilege, we decline to reach an argument about the application of the privilege that

17

Adam did not raise in the trial court in the first instance. (See *North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155, 177–179.)

## III. Attorneys' Fees Award

In his second appeal, Adam challenges the trial court's order granting Claude $247,060.17 in attorneys' fees pursuant to section 15462, subdivision (d). "In general we review the trial court's determinations regarding the propriety or amount of statutory attorney fees for abuse of discretion." (*Bruno*, *supra*, 79 Cal.App.5th at p. 818.) We review associated questions of law de novo. (*Ibid.*)

### A. Timeliness

Adam first argues that Claude's fees motion was untimely. "Except as otherwise provided by statute," rule 3.1702 establishes the timeframe in which a motion for attorneys' fees must be filed. Pursuant to rule 3.1702, a motion for attorneys' fees must be brought "within the time for filing a notice of appeal under rules 8.104 and 8.108." (Rule 3.1702(b)(1).) Rule 8.104 requires a fees motion to be filed on or before "60 days after the superior court clerk serves on the party filing the notice of appeal . . . a filed-endorsed copy of the judgment . . . ." (Rule 8.104(a)(1)(A).) Rule 8.108 extends the time to file a fees motion where "any party serves and files a valid notice of intention to move—or a valid motion—to vacate the judgment" or where "any party serves and files a valid notice of intention to move for a new trial" within the 60-day window prescribed by rule 8.104. (Rule 8.108(a)–(c).) As relevant here, if a motion to vacate or a new trial motion is filed, the time for filing a fees motion is extended, respectively, to 90 days from the date the motion to vacate was filed (here, July 8, 2024), or 30 days from the date the trial court clerk served the parties with the court's order denying the new trial motion (here, July 21, 2024). (*Id.* subds. (b)(1)(A) & (c)(2).) Adam

18

argues that Claude was not entitled to invoke the extended time period with respect to either his motion to vacate the judgment or his motion for a new trial.

Adam first contends that the time for Claude to file his motion for attorneys' fees was not extended by Adam's filing of a motion for a new trial. He argues that his own motion was not "valid" within the meaning of rule 8.108(b) because he titled the pleading "Notice of Motion for New Trial," rather than "Notice of Intention to Move for New Trial," as described in rule 8.108(b). Claude counters that although the pleading title does not precisely track the statutory language, that variance has no legal effect. Further, Claude argues, even if Adam's motion were not valid, Adam prosecuted the motion, requiring Claude to oppose it and the court to issue an order denying it, and Adam should, therefore, not now be allowed to claim error strategically.

The general rules applicable to the filing of a notice of intention to move for new trial are set forth in Code of Civil Procedure section 659. That code section does not specify that a notice of intention to move for a new trial must be titled exactly in those terms, or that, somehow, the "Notice of Motion for New Trial" title of a pleading does not sufficiently apprise the court and parties that it is an expression of intent to move for a new trial. Nor has Adam cited any authority indicating that imprecision in the document title invalidates the substance of the pleading. At most, the authorities he cites indicate that the *procedures* related to new trial motions must be strictly followed; they do not require litigants to adhere to unenumerated, but strict, rules for titling pleading documents. Other statutory requirements may indeed apply to different types of motions, as Adam points out, citing Code of Civil Procedure sections 1005, 1005.5, and 1010, but they do not indicate that

19

the pleading filed here for Adam's new trial motion was inadequate where the operative statute does not so provide. That Adam treated his motion as valid and prosecuted it in the trial court only underscores that the inexact pleading title did not have the effect he now ascribes to it.

Adam next argues that his motion to vacate the judgment was nullified when he filed his notice of appeal, which deprived the trial court of jurisdiction to resolve it. He asserts, therefore, that as of the May 16 date of his notice of appeal, Claude had 30 days in which to file his fees motion, citing rule 8.108. But the 30-day extension set forth in subdivision (c)(1) is triggered only when "the superior court clerk or a party serves an *order* denying the motion or a notice of entry of that order." (Italics added.) The trial court did not issue its order denying the motion to vacate until June 21, the date it was served by the court clerk. Any fees motion keyed off of that date would have to be filed by July 21. That the trial court was ostensibly divested of jurisdiction to hear the motion to vacate as of May 16 does not alter this analysis. Rule 8.108(c) provides that "[i]f, within the time prescribed by rule 8.104 to appeal from the judgment, any party serves and files . . . a valid motion . . . to vacate the judgment, the time to appeal from the judgment is extended for all parties until the *earliest* of" the three possible timeframes set forth in subdivision (c)(1) through (c)(3). (Italics added.) The extension set forth in subdivision (c)(2) of Rule 8.108 provides an earlier deadline for the filing of the fees motion—90 days from the date the motion to vacate was filed, or July 8. That subdivision does not depend in any way on the resolution of the motion to vacate—i.e., by order or by some other means—but rather is triggered simply by the motion's filing. Consequently, the earlier July 8 date controls. Claude's June 18 fees motion

20

was timely filed, before the expiration of either of the timeframes set forth in rule 8.108 for new trial motions and for motions to vacate.

## B. Due Process

Adam next argues that Claude's fees motion did not satisfy due process requirements because Claude failed to set forth in the first paragraph of his notice of motion the amount of fees he was seeking and that he was seeking paralegal fees. (See rule 3.1110(a); Code of Civ. Proc. § 1010.) But neither provision requires a notice of motion to set forth such specific information. In relevant part, rule 3.1110(a) requires the notice to state "the nature of the order being sought and the grounds for issuance of the order," and Code of Civil Procedure section 1010 requires a statement of "the grounds upon which it will be made, and the papers, if any, upon which it is to be based." Adam does not provide case authority that supports his argument that more specific information is required. (See, e.g., *Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1125 [restating requirements of Code of Civil Procedure section 1010 and rule 3.1110(a) without imposing further requirements].)

## C. Paralegal Fees

Adam forfeited his claim on appeal that the trial court erred insofar as it awarded Claude paralegal fees, rather than solely attorneys' fees, because he did not object to the award of paralegal fees in the trial court. (See, e.g., *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 264, fn. 9; *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.)

## D. Allocation of Fees to Removal Claim

Adam next argues that the trial court's award of all of the fees Claude requested was arbitrary insofar as the court failed to allocate the time and fees associated with defending against Adam's removal claim versus all of his

other claims.  Pursuant to section 15642, subdivision (d), "[i]f the court finds that the petition for removal of the trustee was filed in bad faith and that removal would be contrary to the settlor's intent, the court may order that the person . . . seeking the removal of the trustee bear all or any part of the costs of the proceeding, including reasonable attorney's fees."  Section 15642 requires an underlying showing that a trustee's removal is warranted. (§ 15642, subd. (b)(1)–(9).)  As relevant here, "section 15642 authorizes the removal of a trustee upon the petition of a . . . beneficiary, where the trustee has committed a breach of trust . . . ."  (*Bruno*, *supra*, 79 Cal.App.5th at p. 818; see § 15642, subd. (b)(1).)

Here, to prevail on his claim for removal of Claude as trustee, Adam had to prove his underlying breach of trust claims.  As the trial court explained, "the removal claim encompassed all the other claims and, therefore, apportionment of time between the various claims is neither necessary nor appropriate."  Adam has not shown that the trial court abused its discretion in concluding that it was not reasonable or necessary to apportion fees between Adam's breach of trust claims and his removal claim, the latter of which derived from the alleged breaches of trust.

Adam makes one point that at least arguably would support his assertion that the trial court erred in failing to allocate fees properly between his request for removal and other claims in his petition.  He argues that the trial court should not have included fees related to his claim for *suspension* of Claude as trustee, when that claim was distinct from and not dependent on his request to *remove* Claude as trustee.  (Compare § 15642, subd. (a) & (b)(1) [authorizing removal of a trustee for breach of trust], with *id.*, subd. (e) [authorizing suspension of trustee's powers "pending a decision on a petition for removal of a trustee and any appellate review"].)  But Adam did not raise

22

this argument in his opposition to the fees motion, or at the hearing on the motion. It is forfeited.

### E.    Reasonable and Reasonably Necessary Fees

Adam next argues that the fees awarded by the trial court were not "reasonable and necessary" primarily because the billing records were inadequate to support Claude's counsel's apportionment of fees incurred defending this case versus defending the Elsbet Trust case. He also argues that the case was overstaffed and some of the time for which fees were requested was duplicative.

Code of Civil Procedure section 1033.5, subdivision (c)(1) through (3), requires that claimed fees be "incurred," "reasonably necessary to the conduct of the litigation," and "reasonable in amount." As to apportionment of the time spent litigating the claims in Adam's petition here versus his claims in the petition regarding the Elsbet Trust, we note there was substantial overlap—including a joint trial—in the litigation of the two cases. Although the trusts and their provisions were distinct, much of the background of Adam's interactions with his brothers and Claude was relevant to both cases. In addition, as Claude's counsel explained in his declaration in support of his fee request and as the trial court credited, Claude allocated only one-third of the total fees spent litigating the overlapping content of the two petitions to the fee request in this litigation and did not request fees for work solely on the Elsbet Trust case. It was not an abuse of discretion for the trial court to conclude that the removal of items specifically addressed to the Elsbet Trust case, and then the two-thirds deduction, although a rough approximation, adequately accounted for the fact that not all time jointly spent on both cases should be recoverable as fees in this case. Nor has Adam presented

23

arguments that overcome the trial court's assessment that the number of hours spent on this case was reasonable and the case was reasonably staffed.

We disregard as forfeited Adam's arguments that some of the billing records Claude submitted in support of his fee request were not authenticated. In his opening brief he mentions this argument in passing, and in his reply, for the first time, he sets out the single-sentence argument separately, under its own heading, but still without associated record citations or reasoning sufficient to support his assertion.

## F.     Advice of Counsel Defense

Adam argues that the trial court erred by rejecting his defense to the bad faith finding that he relied on the advice of counsel in filing and prosecuting his petition. The court's determination that Adam had not demonstrated reliance on counsel was largely based on credibility. As the court explained, Adam "should have raised [the defense] during the trial when [Claude's] section 15462(d) request was at issue and his factual assertions could have been tested, but he never did. His reliance now on his own testimony—without a word from the attorneys whose advice he allegedly relied upon—is unconvincing. . . . [Adam] was not candid with the court at trial; the court is unwilling to rely on his untested and uncorroborated self-serving post-trial testimony that he was candid with his attorneys." We do not disturb credibility findings on appeal. (*Bruno, supra*, 79 Cal.App.5th at p. 823.) Here, the trial court articulated clear and persuasive reasoning in support of those findings.

Further, as the court explained, Adam made "no showing that he made a 'full and honest disclosure' of the facts to the lawyers he seeks to rely on. . . . Indeed, it is most likely that the facts those lawyers were given were the allegations that [Adam] made, under oath, in his verified petitions—

24

allegations that the court found to be entirely unfounded." Although Adam attempts to frame his challenge to the trial court's denial of his defense as a legal question, his arguments are based on the facts stated in his declaration in opposition to the fees motion. He has not shown a lack of substantial evidence supporting the trial court's conclusion that he did not prove his advice of counsel defense.

### G.     Requests for Fees on Appeal

We decline to grant Claude's requests on appeal to award further fees in his favor and against Adam for Adam's ongoing bad faith conduct in this court. Claude argues that pursuant to section 15642, subdivision (d), the costs he incurred on appeal should be deemed part "of the proceeding" for removal of the trustee. Claude's request is not supported by authority indicating that such an award is authorized and appropriate for appellate proceedings, and he has not made a sufficient evidentiary showing to support such an award even if authorized.

## DISPOSITION

The judgment is affirmed. Claude may recover his costs on appeal.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
SIGGINS, J. *

---

\* Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.